**HAR–RICH REALTY CORPORATION,**
Appellant,

v.

**AMERICAN CONSUMER INDUSTRIES,**
INC. and Charles E. Pledger, Jr.,
Appellees.

No. 18678.

United States Court of Appeals
District of Columbia Circuit.

Argued March 29, 1965.

Decided June 21, 1965.

Mr. Kurt Berlin, Washington, D. C., for appellant.

Mr. Thomas S. Jackson, Washington, D. C., with whom Messrs. Robert M. Gray, John L. Laskey and Austin P. Frum, Washington, D. C., were on the brief, for appellees.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge:

Appellant in an action filed on January 17, 1964 prayed that the District Court set aside a "foreclosure sale of December 20, 1963" and award damages of $250,000. This appeal was brought after summary judgment had been entered for the appellees.

The record shows that the appellant on November 25, 1958 had executed its note payable to the order of American Ice Company in the principal sum of $35,000, with provision for monthly payments of $350, covering principal and interest, with a final payment on December 15, 1965 of the entire balance then due. The note, secured by a first deed of trust in which Charles E. Pledger, Jr. and the late Randolph C. Richardson had been named trustees, further provided:

> "And it is expressly agreed that if default be made in the payment of any one of the aforesaid installments when and as the same shall become due and payable, then and in that event, the unpaid balance * * shall at the option of the holder hereof at once become due and payable. * * * " 1

---

1. The appellant also agreed in the deed of trust to keep the premises insured and to pay all taxes and assessments on the property, for default whereof "any party hereby secured" might expend the cost of such insurance and taxes, and such amounts were to be a secured charge, subject to six per cent interest.

■ The District Judge could have perceived that the history of the monthly payments was one of chronic default by the appellant with repeated counter efforts to cause the appellant to bring the account current. Appellant argued here that, equitably, the acceleration clause in the note should be construed liberally, and it is so that courts often have taken that view. Appellant would say that the default which triggered the payee's final demand was "of one day's delay" and that the appellees because of their previous actions "induced appellant to believe it may be a few days late in its payments without incurring the drastic action which was taken at the end of 1963."

The matter is not so readily disposed of. A combination of circumstances adversely affected the position the appellant would have had the District Court take respecting its status. In the first place, this was not an action to enjoin a prospective sale, but was one brought a month later to set aside the sale. Appellant after demand had been made upon it and notice of the impending sale had been given to it had made no effort to interpose its claim of inequitable conduct before the court or to seek its aid. Appellant's attorney attended the auction and made no offer to post a bond or otherwise to protect the note-holder. The appellant had failed to pay District of Columbia real estate taxes for the years 1962, 1963 and the first half of 1964. Perhaps coloring the appellant's claim more significantly than it seems to realize were the circumstances attendant upon the events of August and September, 1963.

A regular monthly payment of $350 had become due on August 25, 1963, but payment had not been made. As of September 12, 1963, American Ice by registered mail notified the appellant that the note-holder had elected

"to declare the entire unpaid principal balance of $22,181.18 together with interest thereon at the rate of 5% to be due and payable.

"Accordingly we hereby demand immediate payment in full of such sum and interest. We will not accept payment of the installment in arrears."

Thereafter on September 20, 1963, American received in an envelope postmarked September 18, 1963, a check dated August 26, 1963 drawn by another corporation to the order of the appellant. That same day, September 20, 1963, American returned that check, refused to accept it in payment of the amount which had become due on August 25, 1963, and renewed its demand of September 12, 1963 for full payment.

So, the District Judge could have seen, it was not a default of one day that was involved, but a default of nearly a month, climaxing a series of earlier delays with the attendant expense each time involved in the note-holder's effort to collect. Appellant's counsel said at argument: "We claim, and our affidavits show, that on August 25th when the payment was due we mailed the August payment."

The judge undoubtedly rejected so specious a claim. The refused check was dated August 26th, not timely in any event. More important, the judge said:

"It wasn't received until the 20th of September, and was mailed in an envelope postmarked September 18th." [2]

Some three months elapsed before notice and advertisement respecting the sale of the property culminated in an auction

---

2. In light of that expression of the fact, as the judge saw it, the judge may have thought appellant had not aided its cause by the affidavit of appellant's former assistant secretary. She swore that "on August 26, 1963, she prepared and signed, check No. 561, made payable to the order of American Ice Company in the sum of $350.00, being the August installment * * *." She further stated that "either on the same day or shortly thereafter, she mailed said check * * *."

But the envelope had been postmarked September 18, 1963, nearly a week after American had made demand for the entire balance.

with a successful cash bid of $35,000. Obviously the difference between the amount of the indebtedness owing to American and the $35,000 will constitute a substantial balance, the avails of which will inure to the appellant.

If the District Judge concluded that whatever inequity the appellant had asserted had been the result of its own default and its earlier failure to assert such claims as it might have until after the auction, we will not say he erred.

Appellant also argues that the power of sale contained in deed of trust was improperly exercised. That contention stems primarily from the fact that the late Randolph C. Richardson, one of the originally named trustees, had resigned some months before his death, when appointed a judge of one of our courts. Since no successor trustee was thereafter named, appellant urges, the surviving trustee could not exercise the power of sale, and thus "the attempted sale was void." Here again, the appellant's inaction tells against it. Appellant had been notified as early as of May 17, 1962 that Judge Richardson had resigned. Appellant took no step to cause the appointment of a successor. Appellant knew throughout the whole history of American's efforts to collect that Pledger and Edgerton were attorneys for American. That there was a "close relationship" between Pledger as trustee of and Edgerton as a member of his firm acting as attorneys for American is beyond doubt. There is no allegation of misconduct in any respect whatever, and no basis is made to appear upon which the auction should have been declared void.

The judgment is
Affirmed.[3]

FAHY, Circuit Judge (concurring in part and dissenting in part):

Appellant bought the property in November, 1958, for $35,000. It gave a note of that amount payable to the order of American Ice Company, now appellee American Consumer Industries, Inc., requiring monthly payments of $350 on the 25th day of each month, with interest at 5%, with the usual acceleration clause. The note was secured by a deed of trust. Appellant paid, though irregularly, all installments due through July 25, 1963. Thus, when another payment fell due on August 25, 1963, appellant had paid all interest then due and had reduced the principal of the note from $35,000 to approximately $22,000. There was then also due by appellant a small amount of back real estate taxes.[1] Appellant failed to meet the August 25, 1963 installment on its due date. It claims its check for that installment was mailed August 26, but it is fairly clear the check was not mailed until September 18. In the meantime, under date of September 12, appellee corporation advised appellant by letter that it elected to declare the entire unpaid balance of "$22,181.18 together with interest thereon at the rate of 5% per annum from July 25, 1963 to be due and payable."

I accept the view of appellees that the August installment was not received until September 20. It having been received then I think the payment should have been accepted, with the effect of precluding acceleration. My reason is that by the operation of equity the course of conduct of the parties had brought about a modification of their strict legal rights and obligations as set forth originally in the deed of trust. Not only had the amount due on the purchase price been reduced some $13,000 by appellant but appellee corporation had continuously accepted late payments. In the circumstances this created a waiver of its right to accelerate without at least explicitly giving prior notice of its intention to do so should default again occur. Anno., 97 A.L.R.2d 997, 999; see Edwards v. Smith, 322 S.W.2d 770, 776 (Mo.); Let-

---

3. In the view expressed, we find no basis for a claim of money damages. Additionally, we need not examine the effect of appellant's failure to join as a party the buyer at the auction sale. Cf. Gauss

v. Kirk, 91 U.S.App.D.C. 80, 82, 198 F.2d 83, 85, 33 A.L.R.2d 1085 (1952).

1. The deed of trust does not authorize acceleration for delinquency in taxes.

tieri v. Mistretta, 102 N.J.Eq. 1, 4–5, 139 A. 514, 516; Parker v. Mazur, Tex.Civ. App., 13 S.W.2d 174, 175. And see Fant v. Thomas, 131 Va. 38, 45, 108 S.E. 847, 850, 19 A.L.R. 280.[2] In any event, the issue of waiver and whether appellant was lulled into believing no acceleration would result from subsequent late payments were issues which should not have been disposed of by summary judgment.

Appellant tendered not only the August payment but also those falling due in September, October and November; so that before the sale took place all payments which, if accepted, would have brought the note to current status, had been tendered. In this situation the validity of the sale was not so clear as matter of law as to support summary judgment for appellees.[3]

In suing to set aside the sale, however, appellant failed to join as a party the purchaser at the sale. If not indispensable the purchaser was at least a necessary party. Realizing this possibility appellant suggests that if its appeal fails for this reason, insofar as it involves appellant's effort to have the sale set aside, the case should be remanded with leave to amend to make the purchaser a party. This would entail the exercise of a discretion we are not required to authorize at this late stage of the proceedings. I agree that the sale should not be disturbed.

As to appellant's cause of action for alternative relief against appellee corporation, however, the case is different. The purchaser need not be a party to that aspect of the litigation; and since in my view the sale appellee corporation brought about as a consequence of accelerating the note is not shown to have been validly authorized, appellant's cause of action for damages alleged to have been caused to it by such action should be permitted to be pursued.

It follows that I would affirm insofar as the action of the District Court amounts to a rejection of the complaint to set aside the sale, but I would remand the case for reinstatement of the complaint insofar as it seeks damages from appellee note holder due to the sale made by the trustee at its direction.

---

2. The fact that notice of election to accelerate was given prior to receipt of the August installment does not satisfy the requirement. Notice that the next default would mean acceleration was required after the appellee corporation last accepted late payments in August of 1963. True, appellee corporation protested when it accepted late payments and even threatened foreclosure. But before a forfeiture such as this is upheld equity should require an explicit notice.

3. The learned trial judge I think was indeed mistaken in his view that a default for only one day enabled appellee corporation to accelerate the note. This overlooked the part equity had come to occupy in the relationship between the parties arising from their conduct. So minor an infraction would not be the basis for such major consequences.