Donald SIEGEL, et al., Appellants,

v.

Lawrence Kent BANKER, Appellee.

No. 83–634.

District of Columbia Court of Appeals.

Submitted Feb. 21, 1984.

Decided March 2, 1984.*

Christopher A. Teras, Washington, D.C., with whom Gene Schleppenbach, Washington, D.C., was on the briefs for appellants.

---

* The disposition in this case was issued by the court as a memorandum opinion and judgment on March 2, 1984, but is being published upon the request and the granting of a motion to publish by a member of the Bar.

Margaret A. Beller, Washington, D.C., with whom Carolyn R. Just and Jeffrey R. Schmiller, Silver Spring, Md., were on the brief for appellee.

Before NEWMAN, Chief Judge, KERN,** Associate Judge, and YEAGLEY, Associate Judge, Retired.

PER CURIAM:

Appellants-plaintiffs, Donald and Aldeane Siegel, sought to obtain a judgment ordering specific performance of a purchase-and-sale agreement for their condominium. After the presentation of their case, appellee-defendant, Lawrence Banker, orally moved for dismissal on the ground that appellants' evidence failed to state a cause of action. The trial court granted the motion and judgment was entered in favor of appellee. Appellants now challenge the judgment of the Superior Court dismissing their claim. We affirm.

On December 24, 1982, appellants and appellee entered into a written purchase-and-sale agreement in which appellee agreed to purchase appellants' condominium located at 1800 R Street, Northwest for the total sum of $107,000. The contract provided for the payment of a $3,000 deposit, $5,360 at settlement and the assumption of appellants' first trust loan. The balance of the purchase price was to be financed through a wrap around mortgage bearing an interest rate "not to exceed 13 percent per annum" with an assumption fee of one percent of the principal sum of the loan. The following stipulation was also included in the terms of the agreement:

14. FINANCING CONTINGENCY

This agreement is *contingent* upon the ability of Purchaser to secure a firm commitment for the hereinabove described financing, or lender's approval of assumption, if required, within 45 days from the date of the acceptance of this Agreement by the Seller, *which commit-*

ment or approval of assumption Purchaser agrees to pursue diligently. Purchaser reserves the right to increase the cash down payment and/or accept a modified commitment for financing and shall so notify the Seller and the Agent in writing within the term of this contingency. In the event Purchaser fails to obtain a commitment for the specified financing and fails to increase the cash down payment and/or accept a modified commitment within the specified period of time, then this Agreement shall be null and void and Purchaser's deposit shall be refunded without deduction. [Emphasis added.]

An addendum to the agreement provided that appellee would apply for a mortgage within seven business days from appellants' approval of the contract.

Appellee filed a loan application with a mortgage broker within seven days after the purchase agreement was signed. However, due to various delays in obtaining financial information, appellee's loan application was not completed until January 13, 1983. About 45 days following execution of the contract, appellee obtained approval for a mortgage. The loan was at a rate of 12¼ percent with two and one-half points. This rate was in excess of the one point that appellee had originally agreed to pay, and he was entirely unwilling to pay the extra points. He communicated his dissatisfaction to Jeffrey Brier, appellants' real estate agent. Brier, independently and for the benefit of appellants, attempted to arrange alternative financing within the parameters of the agreement, and in fact, assured appellee that he could do so. Nothing substantive, however, resulted from Brier's efforts.

On March 15, approximately one month after the expiration of the financing contingency term, appellants offered to renew the original contract and to extend the period of financing through April 15, 1983. By

---

** Judge Kern was an Associate Judge of the court at the time of disposition. His status changed to Associate Judge, Retired on May 25, 1984.

this time, however, appellee had become disillusioned with the negotiations and rejected appellants' offer. On March 25, 1983, appellants filed a complaint in the Superior Court alleging that appellee had failed to proceed to settlement in accordance with the terms of the contract. They sought an order granting specific performance of the purchase agreement.[1] They also sought damages in the sum of $150,000 detrimental reliance, $150,000 consequential damages, and $100,000 punitive damages, in addition to court costs and attorney fees. Appellee defended by arguing that the purchase agreement could not be enforced. He asserted that it had been rendered null and void because he was unable to procure the agreed upon financing within forty-five days.

At the close of appellants' case, appellee orally moved to dismiss the case on the grounds that appellants failed to state a cause of action. In light of the fact that appellee was unable to obtain the specified financing within the prescribed time period, the court found that the contract had expired by its own terms. In granting the motion, the court specifically stated:

> Well, the contract seems fairly clear to me. The 45 day contingency is a common provision of real estate contracts. This court is very familiar with such contracts, whether they be for condominium or other real property, and I've heard testimony and I've had the benefit of Dr. Banker's testimony, as well, being called as a witness in the plaintiffs' case, and I'm satisfied that the contract was not altered; there was no extension signed. Plaintiffs have failed to make out a cause of action.

Appellants now argue on appeal that the court erred in granting the motion to dismiss. Their claim rests upon two contentions: first, that time was not of the essence to the purchase-and-sale agreement and, second, even if it were essential, timely performance was waived by appellee. In support of their first contention, appellants argue that the forty-five day period was only an approximation of the amount of time the parties felt appellee would need to obtain the requisite financing, not an absolute deadline. They assert that appellee's failure to obtain financing within 45 days was not sufficient grounds to support dismissal of their claim. We disagree.

It is well settled that parties to an agreement may make time an essential part of the contract and in such cases, the failure by one of the parties to perform his part of the obligation within the time prescribed discharges the other from all liability under the contract. 6 WILLISTON CONTRACTS § 846 at 181 (3d ed.). Time will be considered "of the essence" where the contract expressly so provides, where definite terms of the contract show that the parties regarded the time of performance to be of vital importance, or where the nature of the property or the exigencies of the transaction make timely performance essential. *Drazin v. American Oil Co.*, 395 A.2d 32, 34 (D.C.1978); quoting *Kasten Construction Co. v. Maple Ridge Construction Co.*, 245 Md. 373, 379, 226 A.2d 341, 345 (1967); *King v. Stevenson*, 445 F.2d 565, 569 (7th Cir.1971). The presence of the exact phrase "time is of the essence" is, therefore, not necessary. Any words which provide in unequivocal language that if the terms of the contract are not fulfilled within a specified period of time, the contract is to be void, will have the same effect. *See Kays v. Brack*, 350 F.Supp. 1243 (D.Idaho 1972).[2]

---

1. Appellants also applied for a temporary restraining order to prevent appellee from purchasing any real or personal property that would restrict his ability to comply with the terms of the agreement. The restraining order was subsequently denied on April 1, 1983.

2. In *Kays* a provision in an agreement for the sale of corporate stock made the purchaser's obligation contingent upon his ability to secure financing within ten days of the execution of the contract. The clause further provided that should buyer be unable to procure financing within that period either party could elect to terminate. Closing was set for October 16, 1971. On October 14, buyer requested an extension of time to obtain financing. On October

 The issue then before this court is whether the record supports the trial court's conclusion that timely performance was essential to the terms of the purchase-and-sale agreement. We hold that it does. The clause in question expressly conditions the contract upon the purchaser obtaining specific financing within forty-five days from the contract date, December 24, 1982, with the proviso that if the loan is not obtained within the time period, then the contract shall immediately become null and void. While we find that time is nowhere in the agreement expressly declared to be "of the essence," it is difficult to conceive of language which would more clearly imply that such was the intention of the parties. This intention is expressed in clear and unambiguous terms in the agreement. The contract speaks for itself and the liabilities of the parties must be determined by its plain and obvious meaning. The language of the 45 day financing contingency demonstrates both the importance of procuring financing and the consequences of failing to comply with the provision. Since appellee was, in fact, unable to obtain the agreed upon financing within 45 days, the trial court was correct in ruling that the agreement automatically expired by its own terms and in refusing to order specific performance.

The fact that timely performance was essential to the parties is highlighted by appellants' written offer to extend the financing contingency. On March 5, 1983, appellants offered to renew the contract and to extend the time in which appellee should obtain financing through April 15, 1983. Appellee, however, refused to enter into any further agreement with appellants. This formal offer to extend the financing contingency term casts doubt on appellants' position that the specified financing contingency was a mere approximation and not an absolute deadline. *See Soldano v. Holmes*, 60 A.2d 535, 538 (D.C.

1948); *Allard & Geary, Inc. v. Faro*, 122 N.H. 573, 574, 448 A.2d 377, 378 (1982). It is abundantly clear that the terms of the financing contingency made time essential to the performance of the contract. Both the language and the surrounding circumstances support the court's findings and indicate the clear intent of the parties.

 Appellants next asserts that even with time being of the essence of the contract appellee's conduct manifested an intent to waive the 45 day contingency. Specifically, appellants claim that appellee expressly gave Brier authority to pursue alternative methods of financing and also requested an extension of the settlement date. Appellants contend that this behavior exhibits an intent on appellee's part to waive the financing contingency. These assertions, however, are not borne out by the record. Appellee, who was called as a witness by appellants, testified at trial that he never gave Brier written authorization to make alternative loan arrangements. He also denied ever agreeing to extend the date for settlement. The trial judge apparently credited this testimony. We can not say that the trial court's ruling is clearly wrong or without evidence to support it. D.C.Code § 17–305 (1981).

Accordingly, the judgment on appeal is *Affirmed.*

17, seller served notice of termination. On October 28, the buyer received a firm loan commitment. The District Court enforced the termination clause and denied purchaser's claim for damages or breach of contract holding that a condition precedent was unfulfilled and therefore, there was no enforceable contract.