CAMALIER & BUCKLEY,
INC., Appellant,

v.

SANDOZ & LAMBERTON,
INC., Appellee.

No. 93–CV–306.

District of Columbia Court of Appeals.

Argued Oct. 20, 1994.
Decided Nov. 6, 1995.

Michael E. Brand, Miami Beach, FL, with whom Kenneth J. Loewinger and David K. Lietz, Washington, DC were on the brief, for appellant.

John J. Brennan, III, with whom Tonia J. Powell, Washington, DC, was on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

This is an appeal from an order denying appellant's motion to vacate a consent order and judgment for possession and to dismiss appellee's underlying suit for possession of commercial property. We vacate the order denying the motion and remand for the limited purpose of allowing appellant an opportunity to present evidence that it made the rent arrearage payments prescribed by the consent order in timely fashion.

## I.

Appellee Sandoz & Lamberton, Inc. (Sandoz) sued appellant Camalier & Buckley (Camalier) for possession of leased real estate and for unpaid rent, late fees, and other costs totalling $48,590.58. Before trial the parties negotiated and entered into a settlement. On January 3, 1992, they executed and Judge Richard Salzman approved a consent order and judgment for possession (consent order) entitling Sandoz to possession of the premises and rent due. Execution was stayed, however, on the condition that Camalier, *inter alia*, pay the arrearage plus interest according to a precise schedule set forth in the consent order.[1] For its part, Sandoz agreed

1. In pertinent part, the agreement provided as follows:

(1) From January 1, 1992 to January 1, 1993, the reduced monthly rent shall be $7,533.75 and shall be due and payable on the first day of each month;

* * * * * *

(3) On January 1, 1992, the tenant shall pay $15,931.50 (reflecting credit for payments required and made under order of October 28,

to a reduction in the regular rent for the duration of 1992.

The consent order set forth consequences to the parties of both compliance and noncompliance with the payment schedule:

(7) ... If the tenant makes all payments required under paragraphs (1), (3), (4) and (5) between the time of the entry hereof and December 1, 1992, then upon the final payment due December 1, 1992, this Judgment shall be deemed fully satisfied and shall be of no further force or effect and, upon tenant's motion, shall be vacated and the case dismissed.

Conversely, if Camalier failed "to make any payments as hereinabove agreed, through December 1, 1992," Sandoz, "upon filing an Application for Termination of Stay" with the Clerk of the Superior Court "and without further order of Court," would "be entitled to have this stay set aside and vacated, to have immediate issuance of a writ of restitution, and to have the right to take any action permitted under law to collect Judgment herein." [2]

It is undisputed that Camalier eventually made the payments required by the consent order. What is disputed is the timing of the payments. Both parties also concede that the interest Camalier should have paid by December 1, 1992, was paid late following Sandoz's demand for an exact sum of interest in a letter dated January 27, 1993. Claiming

to have satisfied the judgment, Camalier filed a motion to vacate the consent order and dismiss the case on February 25, 1993, requesting a hearing. Sandoz filed its opposition to the motion on the morning of the hearing, March 4, 1993. Whereas the affidavit of Camalier's president asserted that all payments due under the consent order had been timely made except for the interest payment,[3] Sandoz countered that Camalier had not made a single one of the approximately sixteen payments on time, supporting this with an affidavit of its accounting manager which documented the late payments as reflected in a ledger.[4] Because Camalier had failed to comply with the terms of the consent order, Sandoz opposed vacation of the order and dismissal of its suit.

Camalier responded that, because it had received Sandoz's opposition only that morning, it was not prepared to show the precise date when payments were made but that it disputed the claims of nonpayment and wished to present evidence of compliance. It also made legal arguments, discussed in part III, *infra*, as to why even if the payments were late as alleged, Sandoz's conduct (including failure expressly to make time of the essence in the consent order) excused its belated compliance inasmuch as all of the payments had eventually been made and accepted. After hearing argument but without delaying ruling until Camalier could present

---

1991) in real estate taxes due under the Lease. Upon payment of this amount, tenant shall be deemed current in all real estate taxes due and payable under the Lease to date.

(4) The tenant shall pay any real estate taxes which become due after January 1, 1992 pursuant to paragraph 5 of the Lease;

(5) The parties agree that the Judgment for the arrearage owed by the Tenant is $48,-598.58. The tenant will repay that amount, plus interest running from April 1st, 1991 at an 8% annual rate, compounded monthly as follows:

(a) The amount of $10,000.00 shall be paid on or before January 1, 1992; the amount of $10,000.00 shall be paid on or before February 1, 1992;

(b) The amount of $5,000.00 shall be paid on or before March 1, 1992;

(c) The amount of $5,000.00 shall be paid on or before *April 1, 1992*;

(d) The amount of $10,000.00 shall be paid on or before November 1, 1992; and

(e) The amount of $8,590.58 plus accrued interest shall be paid on or before December 1, 1992;

(6) The tenant shall pay court costs of $13.75 on January 1, 1992.

2. In addition, Sandoz, on filing a motion for entry of judgment, would be "entitled to an additional Judgment for" unpaid rent accruing after the date of the consent order, the rent reduction provided by the consent order, and attorney's fees and costs.

3. Camalier argued that it should be excused from this breach because the consent order was unclear as to how the interest was to be paid and the parties had operated under the mutual mistaken belief that interest was already included in the delineated payments.

4. Sandoz also asserted that the consent order was explicit and unambiguous that the interest due on December 1 was in addition to the other scheduled payments.

evidence rebutting Sandoz's affidavit and ledger entries, the trial judge denied the motion to vacate and dismiss.

Camalier noted an appeal on March 16, 1993, by which time Sandoz had not exercised any of its options for enforcement of the consent order and judgment, which therefore remains stayed.

## II.

■ We first consider Sandoz's motion to dismiss the appeal for lack of a final order, relying on the fact that Sandoz has not sought termination of the stay. A motions division of this court previously denied the motion to dismiss, but we directed the parties to discuss the issue at oral argument.[5] Like the motions division, we hold that the order denying Camalier's motion to vacate was a final order and hence appealable. D.C.Code § 11–721(a)(1) (1989).

The trial judge, though without explanation, necessarily accepted Sandoz's contention that Camalier failed to make some or all of the payments as required by the consent order. The judge therefore denied Camalier its remedy for satisfaction of the consent order, i.e., vacation of the judgment and dismissal of the underlying suit. Unless Camalier may appeal that ruling, all that remains to be done in the trial court is for Sandoz to exercise its rights under the consent order, including filing an application with the Clerk of the Superior Court for termination of the stay, whereupon—"without further order of the Court"—Sandoz is entitled to issuance of a writ of restitution and eviction of Camalier from the property. In short, the procedures that remain in the trial court before Camalier may be evicted are ministerial.

■ To be "final" under § 11–721(a)(1), an order must " 'dispose[ ] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered.' " *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 36 (D.C.1979) (quoting *McBryde v. Metropolitan Life Ins. Co.*, 221 A.2d 718, 720 (D.C. 1966)). The trial judge's order meets that

test. The fact that Sandoz, believing that Camalier's appeal divested the Superior Court of jurisdiction to issue the writ of restitution, has not yet sought the writ and dispossession is inconsequential. Camalier is not required to live under the suspended sword of execution on the judgment when its right to have the judgment vacated and the suit dismissed has been determined.

## III.

■ On the merits, Camalier first contends that, assuming it failed to make payments (all or any) by the dates specified in the consent order, Sandoz waived its entitlement to judgment by accepting the late payments without objection, and further that the absence of an express "time is of the essence" clause from the agreement excused Camalier's failure to make payments in accordance with the schedule. We reject these arguments.

■ A consent order is an order of the court, indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order. It is also a contract, which must be construed within its four corners. It should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake.

*Moore v. Jones*, 542 A.2d 1253, 1254 (D.C. 1988) (citations and internal quotation marks omitted). "To encourage voluntary settlements, settlement agreements should not be modified in favor of either party, absent the most compelling reasons." *Id.* at 1255. As we pointed out in *Suitland Parkway Overlook Tenants Assoc. v. Cooper*, 616 A.2d 346 (D.C.1992), "the compelling reasons [*Moore* ] referred to require 'a showing of good cause to set ... aside [the judgment], such as fraud, duress, or mistake.' " *Id.* at 351 (quoting *Moore*, 542 A.2d at 1254).

Accepting Camalier's waiver argument would effectively modify the consent order, which contains no provision conditioning San-

---

5. *See District of Columbia v. Trustees of Amherst College*, 499 A.2d 918, 920 (D.C.1985) (denial of motion to dismiss by motions division "without prejudice" to reconsideration by merits division).

doz's right to execute on the judgment on prior objections to a late payment. Rather, "[u]pon failure of the tenant to make any payments as hereinabove agreed," Sandoz was entitled to an immediate writ of restitution as described above, without having to make a demand. This court long ago directed enforcement of a consent judgment for failure to pay a rent arrearage by the required date despite the tenant's claim that payment had been made as soon as he was notified of the delinquency. *Maiatico v. Novick,* 108 A.2d 540, 541 (D.C.1954).

■ Camalier asserts none of the "compelling reasons" cited in *Moore* for departure from the terms of the consent order. Instead it relies on the equitable principle that "the course of conduct of the parties may bring about a modification of their strict legal rights and obligations to the point that the creditor could be said to have created a waiver of its right to accelerate [or, as here, to evict] 'without at least implicitly giving prior notice of its intention to do so should default again occur.'" *Kummli v. Myers,* 130 U.S.App.D.C. 303, 306, 400 F.2d 774, 777 (1968) (quoting *Har–Rich Realty Corp. v. American Consumer Indus., Inc.,* 122 U.S.App.D.C. 88, 90, 351 F.2d 785, 787 (1965)). But Camalier cites no decision applying this principle to a consent judgment, "which is presumptively valid and hence enforceable" as written. *Moore,* 542 A.2d at 1255. In *Suitland Parkway* we rejected the notion that the disfavored status of forfeitures is cause "to imply an equitable authority in the trial court to modify a consent judgment where none of the compelling reasons required by *Moore* is present." 616 A.2d at 351. *See also Trammell v. Estep,* 42 A.2d 501, 502 (D.C.1945) (landlord's forbearance does not permit "destruction of rights established by a valid judgment" stayed by parties' consent). We thus reject the argument that Sandoz waived its right to enforce the judgment by prior failure to object to the late payments.

■ For similar reasons, the absence of a time is of the essence clause did not excuse Camalier's noncompliance with the order. Camalier, in return for a substantial reduction in current rent for the length of the agreement, yielded possession of the premises to Sandoz without further court order if it failed to make any of the payments as agreed. The order set forth an exact schedule by which the arrearage and interest payments were to be made. See note 1, *supra.* In these circumstances we decline to read significance into the absence of a provision making late payment inexcusable (*i.e.,* time of the essence). Camalier misreads *Suitland Parkway, supra,* as indicating that the *presence* of such a clause in that case was pivotal to enforcement of the judgment as written. It was a factor—but only that—in our explanation of why the tenant's single breach of a payment deadline could not "be viewed in isolation." 616 A.2d at 349. There had been three successive consent orders between the parties, two containing a time is of the essence provision. We concluded that "[w]ere we to excuse [the single failure to pay the November rent timely] as insubstantial or *de minimis,* we would render *the succession of consent judgments* largely meaningless." *Id.* at 350 (emphasis added). What Camalier can legitimately argue is that *Suitland Parkway* requires the court to view a single breach of a consent order within the context of the tenant's entire performance. But Camalier concedes for purposes of the present argument that it made more than one—indeed, a sizeable number—of the required payments late. *Suitland Parkway* provides no basis for relieving it of the consequences of that failure.

### IV.

■ Camalier's remaining argument stands on better footing. It contends that the trial judge denied it the opportunity to present evidence rebutting the landlord's records showing the late payments. Sandoz responds that we need not reach this argument because Camalier admits that one payment, the accrued interest due on December 1, 1992, was not made until February 11, 1993. Camalier asserts only that the parties both "mistakenly believed" that the interest was included in the arrearage sums already paid, but we agree with Sandoz that the consent order was explicit in obligating Camalier to pay a separate interest sum on or

before December 1. Nevertheless, as pointed out above, our decision in *Suitland Parkway* leaves it questionable whether we would allow forfeiture for breach of a single term of a consent order without regard to the tenant's performance generally. It thus becomes important whether the trial judge had a sufficient basis on which to conclude that Camalier had been late on additional payments under the agreement.

Camalier filed its motion to vacate judgment and attached to it the affidavit of its president asserting that it had made all payments timely under the order. A hearing was scheduled for five working days later, pursuant to Super.Ct.L & T R. 13(c) (1993). On the morning of the hearing, Sandoz filed its opposition to the motion, appending to the submission the affidavit of its accounting manager detailing Camalier's tardiness. At the hearing, Camalier's attorney made the arguments of waiver and substantial compliance (no "time is of the essence" clause) we have rejected, but also stated its wish to present evidence challenging the accountant's information. See Tr. 17 ("we have not conceded ... that those allegations are correct"); 9 ("Perhaps I'm not entitled to dismissal until I have a hearing"); 4 ("I suppose we're going to have to have testimony on it" if judge concludes precise date of payments is critical). Sandoz argues that the trial judge properly refused to hold a hearing because Camalier's attorney admitted that he had "not been able to confirm with [his] client when those payments were made." But given the fact that Sandoz had challenged Camalier's assertion of compliance for the first time that morning, we conclude that it was error for the trial judge not to continue the matter for a short period to allow Camalier the opportunity to present evidence.

Super.Ct.L & T R. 12(b) provides that when parties to a landlord and tenant dispute cannot settle their controversy,

> the Court shall proceed with a trial on the merits of the case.... [T]he Court shall conduct the trial informally and in such manner as to fully elicit all matters of defense and all facts in the case which will enable the Court to arrive at a just decision on the merits.

While this "informality" would seem to support Camalier's request for additional time, Sandoz argues that it is out of place in a proceeding on the tenant's motion to vacate a judgment (albeit stayed) already entered against it; in that setting the tenant must be ready with its evidence as soon as the case is heard. But we think this confuses the policy of strict reading and enforcement of consent orders, exemplified in part III, *supra,* and the separate issue of a party's fair opportunity to show compliance with the order. If Camalier failed to make any of the rent or arrearage payments on time (together with its conceded failure to pay the accrued interest timely), then Sandoz is entitled to execution on the judgment. But Rule 12(b)'s contemplation of a procedure flexible enough to promote "a just decision on the merits" implies that Camalier's showing should not have been cut off at the threshold. We note that although Camalier's final payment under the agreement was due on December 1, 1992, Sandoz asserted no claim of breach until the morning of the hearing on March 4, 1993. Camalier's unreadiness to document its compliance at the hearing was therefore not surprising. On remand it must be permitted the chance to do so.

*Vacated and remanded.*

WAGNER, Chief Judge, concurring in part and dissenting in part:

Although I agree with Judge Farrell that this court has jurisdiction[1] and that a remand is required for an evidentiary hearing to resolve disputed factual issues before this case can be resolved, I disagree with his disposition of other legal issues raised by appellant, Camalier & Buckley (Camalier). In my view, resolution of Camalier's claims are dependent upon the application of basic contract principles which are appropriate for

---

[1] Appellant filed a motion to enforce judgment which the trial court denied. Although the opposing party, Sandoz, may have a potential claim to enforce judgment also, in this case, no such claim was filed or pending when appellant appealed from the order denying it relief. Unquestionably, a party may seek to enforce a final judgment or order by motion, and upon denial of relief may have the court's order reviewed in this court as a final order.

consideration under the facts of this case. I reach this conclusion because of the nature of a consent decree, which creates a contractual relationship between the parties, and in light of the issues of contract law as related to the facts presented, which have been raised by the parties and are determinative of their rights under the consent order.

Since a consent decree has many of the characteristics of a contract, it should be construed basically as a contract, and principles of contract interpretation should apply. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975); *United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971); *see also Moore v. Jones,* 542 A.2d 1253, 1256 (D.C. 1988); *Ramsey, Inc. v. Davis,* 66 Md.App. 717, 505 A.2d 899, 904 *cert. denied,* 306 Md. 514, 510 A.2d 260 (1986). Essentially, a consent order is an agreement of the parties which places them in a contractual relationship with each other and which the court has approved by order. *Padgett v. Padgett,* 472 A.2d 849, 852 (D.C.1984); *Chernick v. Chernick,* 327 Md. 470, 610 A.2d 770, 774 (1992). Like a contract, a consent order must be construed "within its four corners" and enforced as written, absent fraud, duress or mistake, *Moore, supra,* 542 A.2d at 1254; however, consideration of various contract principles in construing the consent order is not prohibited and "does not in any way depart from the 'four corners' rule of *Armour,"* which we followed in *Moore. See Continental Baking,* 420 U.S. at 238, 95 S.Ct. at 935. As the Supreme Court stated in *Continental Baking,*

> [s]ince a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties,

and any other documents expressly incorporated in the decree.

*Id.*

Here, appellant Camalier relies upon certain contract principles in support of its claim of full performance under the contract entitling it to vacation of the judgment and dismissal of the case in accordance with the terms of the consent order. Specifically, Camalier contends that the trial court misconstrued the terms of the parties' agreement by implicitly interposing a "time is of the essence" provision which does not appear in the consent order.[2] Appellant contends that the contract contains no provision or other language in the consent order which may be construed as making time of the essence. Indeed, there is no dispute that there is no explicit "time is of the essence" provision in the consent order. It has been held that even the specification of a particular time schedule, as appears in the consent order in this case, does not serve to make time of the essence. *See Fitz v. Coutinho,* 136 N.H. 721, 622 A.2d 1220, 1223 (1993). Generally, time will be considered to be of the essence in a contract where it is stated in specific terms or "where definite terms of the contract show that the parties regarded the time of performance to be of vital importance, or where the nature of the property or the exigencies of the transaction make timely performance essential." *Siegel v. Banker,* 486 A.2d 1163, 1165 (D.C.1984); *Drazin v. American Oil Co.,* 395 A.2d 32, 34 (D.C.1978).

In this case, there is language in the consent order which tends to support Camalier's claim that the installment payment dates were not determinative of Camalier's right to have the judgment vacated upon completion of the specified payments. The consent order reads in pertinent part as follows:

> If the tenant [Camalier] makes all payments required under paragraphs (1), (3), (4) and (5) *between the time of the entry hereof and December 1, 1992,* then upon the final payment due December 1, 1992,

**2.** According to the affidavit presented by appellee in the trial court, appellant made every payment due under the consent order a few days late, except for accrued interest, which was paid approximately two months late. As to the latter,

Camalier contended that there was a mutual mistake of fact between the parties and that it paid within a reasonable time after the matter was resolved and a demand was made.

this Judgment shall be deemed fully satisfied and shall be of no further force or effect and, upon tenant's motion, shall be vacated and the case dismissed.

(Emphasis added.) The foregoing passage may be read fairly to mean that if the payments were made in full at any time between the time of the entry of judgment and December 1, 1992, then the tenant would be entitled to have the judgment set aside. The paragraph which follows relates to remedies which Sandoz has upon Camalier's failure to make the payments.[3] At the very least, the clause creates ambiguities about whether upon payment in full in accordance with the preceding paragraph, Camalier would be entitled to vacation of the judgment. Where provisions of a contract are reasonably susceptible of different constructions or interpretations, it is ambiguous, and extrinsic evidence may be required to determine its meaning. See Young v. Delaney, 647 A.2d 784, 790–91 (D.C.1994); Rivers & Bryan, Inc. v. HBE Corp., 628 A.2d 631, 635 (D.C. 1993); Howard Univ. v. Best, 484 A.2d 958, 967 (D.C.1984). A question was raised for the trier of fact which was not resolved by the trial court. See Rivers, 628 A.2d at 635. Similarly, whether time is of the essence and a delay in payments constitutes a material breach of a contract is a question for the trier of fact based upon the surrounding circumstances. RESTATEMENT (SECOND) OF CONTRACTS § 241 & cmt. a at 237 (1981); see also Siegel, supra, 486 A.2d at 1166 (language and surrounding circumstances indicate clear intent of parties to make time of the essence).

This court's opinion in Suitland Parkway Overlook v. Cooper, 616 A.2d 346 (D.C.1992) does not dictate a contrary result. In Suitland, unlike this case, the consent order contained a "time is of the essence" clause.[4] Id. at 348. In light of the explicit terms of the contract in Suitland, which made time of the essence and any breach non-curable, the trial court explained to the tenant that she would not even be able to redeem her tenancy in the event of non-compliance. In Suitland, not only was "time is of the essence" expressed in the consent order, but the landlord also evidenced its intent to enforce specifically the time requirements in a subsequent agreement and by moving to evict the tenant. Id. Therefore, this court held that the trial court's ruling that a late payment constituted a de minimis breach of the consent judgment effectively modified the express terms of the parties' agreement. Id. at 349–50.

This case is quite different. Unlike the landlord in Suitland, not only did Sandoz not bargain for a "time is of the essence" clause nor a non-curable breach clause, it also accepted all payments and never sought to enforce the judgment for possession by applying for a writ of restitution. Moreover, nothing in the consent order suggests that Camalier would be foreclosed from taking the customary steps to relieve itself from a forfeiture of the lease under the doctrine of Trans–Lux Radio City Corp. v. Service Parking Corp., 54 A.2d 144 (D.C.1947), in the event that Sandoz applied for a writ of restitution. In any event, that aspect of the matter is not before the court because Sandoz has never sought a writ of restitution.

In summary, appellant Camalier sought unsuccessfully in the trial court to enforce the terms of a consent judgment which provided that upon full payment of the money judgment of $48,598.58 plus interest and various other payments between the time of entry of the judgment and December 1,

---

3. This paragraph reads:

Upon failure of the tenant to make any payments as hereinabove agreed, through December 1, 1992 the landlord, upon filing an Application for Termination of Stay and with 5 days Notice to Defendant of L & T Form 5 and without further order of Court, shall be entitled to have this stay set aside and vacated, to have immediate issuance of a writ of restitution, and to have the right to take any action permitted under law to collect the Judgment herein.

4. An amended consent order in Suitland Parkway stated that "[t]ime is of the essence" and that it was

the express understanding of the parties that the landlord would not have entered into this agreement but for the promise of the tenant(s) to pay rent on a timely basis and that the failure of the [tenant] to make timely payment as agreed herein shall be deemed as a non-curable breach of this agreement.

Suitland, supra, 616 A.2d at 348.

1992,[5] upon Camalier's motion, the judgment "shall be vacated and the case dismissed."[6] Camalier contended factually, with a supporting affidavit, that it had complied with the terms of the consent order which entitled it to vacation of the judgment and dismissal of the case. Appellee Sandoz by a counter affidavit contended otherwise. For the reasons stated by Judge Farrell, I agree that appellant on remand must be afforded a hearing to resolve the factual disputes. For the reasons stated in this opinion, in my view, the trial court must also resolve any ambiguities in the consent order and any factual disputes applying basic contract principles.[7]

KING, Associate Judge, dissenting in part, concurring in part, and concurring in the result:

In my view, we have no jurisdiction to hear this claim because the trial judge's order, given as it was without explanation, was not dispositive of any issue, therefore, was not final, and hence, not appealable. D.C.Code § 11–721(a)(1) (1995). Nonetheless, for the reasons set forth below, I concur in the results reached by Judge Farrell.

## I.

I do not quarrel with the facts as set forth in Part I of Judge Farrell's opinion and I will not repeat them here. Also, I agree with the observation expressed in that opinion that, to be final under § 11–721(a)(1), an order must "dispose[ ] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 36 (D.C.

1979) (quoting *McBryde v. Metropolitan Life Ins. Co.*, 221 A.2d 718, 720 (D.C.1966)). Stated differently, "[t]o be reviewable the judgment or decree must not only be final but also complete, that is, final not only as to all parties, but as to the whole subject matter and all the causes of action involved." *Trilon*, 399 A.2d at 36. The order before this court does not meet that test.

The trial judge denied Camalier and Buckley's motion to vacate and dismiss without explanation. Judge Farrell says that in taking that action, the trial court "necessarily accepted Sandoz's contention that Camalier [and Buckley] failed to make some or all of the payments as required by the consent order," *ante* at 825. I do not agree for the reasons set forth below.

The motion to vacate asserted that Camalier and Buckley had "fully complied" with all terms and conditions of the consent order, in that all payments had been "timely made." The motion also justified the lateness of an interest payment required by the consent order, claiming that the consent order provision relating to that payment was confusing to both Camalier and Buckley and Sandoz. Sandoz opposed the motion to vacate on several grounds. Specifically, Sandoz claimed that none of the payments were made on time and that the consent agreement was not in the least bit confusing with respect to when the interest payment should be paid. Further, Sandoz argued that, because the payments were not timely, Camalier and Buckley did not comply with the consent order and therefore "may not be relieved of the agreed upon consequences of that failure,

---

**5.** The consent judgment also included a judgment for possession of the real property, which was the subject of the action, with a stay of execution of both judgments conditioned upon specific payments of rent and arrearages as well as real estate taxes. Upon failure of the tenant to comply, Sandoz had the right to file an application to terminate the stay upon filing of L & T Form 5, which is an application for termination of stay of execution and notice of the immediate issuance of a writ of restitution. Sandoz had not availed itself of this remedy by the time that Camalier sought to have the judgment vacated.

**6.** The pertinent language of the provision reads as follows:

If the tenant [Camalier] makes all payments required under paragraphs (1), (3), (4) and (5) between the time of the entry hereof and December 1, 1992, then upon the final payment due December 1, 1992, this Judgment shall be deemed fully satisfied and shall be of no further force or effect and, upon tenant's motion, shall be vacated and the case dismissed.

**7.** Appellant offered other theories in support of its claim for relief including waiver of the terms of the consent order, which should be considered and resolved in the first instance by the trial court.

which is the payment of rent due which had been waived."[1]

The trial judge, without explanation, denied the motion to vacate. In doing so, the court gave no indication that it had decided whether or not: the payments had been timely made; the lateness in the payment of the interest payment could be excused due to confusion engendered by the language of the consent decree; the lateness of payments constituted non-compliance, and, if there has been non-compliance, the amount of additional rents owed. Those issues must be resolved before the order becomes final. *See e.g., L.A.W. v. M.E.,* 606 A.2d 160, 161 (D.C. 1992) (order not final where amount of support not finally decided); *McDiarmid v. McDiarmid,* 594 A.2d 79, 82 (D.C.1991) (citing cases where order not final where exact amount of financial obligation not determined).

Judge Farrell maintains that unless Camalier and Buckley is permitted to appeal the order denying the motion to vacate, Sandoz is free, pursuant to the terms of the consent order, to terminate the stay by filing an application to do so with the clerk of the Superior Court; "whereupon—'without further order of the Court'—Sandoz is entitled to issuance of a writ of restitution and eviction of Camalier [and Buckley] from the property," *ante* at 825. It is not at all clear that the matter could be resolved as simply as that. For example, paragraph (9) of the consent order requires five calendar days notice to the tenant before the filing of any Motion for Entry of Judgment, and there is no indication whatsoever that Camalier and Buckley would be barred from opposing the lifting of the stay on the ground of substantial compliance with the terms of the consent order. Upon the filing of an opposition to a motion for judgment the court could decide the issues left undecided in the order which are the subject of this appeal, including what is probably the most significant question: is there additional rent due, and if so, how

much? Once those determinations have been made, Camalier and Buckley will have its final order. It does not have one now.

In sum, as the order stands, it is not dispositive of either party's rights, and is thus not ripe for appeal. *See Trilon,* 399 A.2d at 37 ("Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.") (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949)). Therefore, I would reconsider the motion to dismiss this appeal filed by Sandoz (and denied by the motions division) and I would grant it. *See District of Columbia v. Trustees of Amherst College,* 499 A.2d 918, 920 (D.C.1985) (the denial of a motion to dismiss for lack of jurisdiction by a motions division is "without prejudice" to reconsideration by a merits division).

## II.

Because I am of the view that we do not have jurisdiction to consider this appeal, I would not ordinarily reach the issues dealt with in Parts III and IV of Judge Farrell's opinion. My colleagues have concluded, however, that we do have jurisdiction, although they disagree on the resolution of the substantive claims made. Therefore, if I do not address those points this case will never be resolved. Accordingly, although remaining of the view that this court lacks jurisdiction, but having been out-voted by my colleagues with respect to that issue, I will reach the merits of this dispute.

To that end, I join Part III of Judge Farrell's opinion. I do not agree, however, with Judge Farrell's conclusion, in Part IV, that the trial judge erred in denying Camalier and Buckley the opportunity to present evidence relating to the timeliness of payments. Without any legitimate explanation, Camalier and Buckley was not prepared to

---

1. The consent order is set forth in its entirety as an appendix to this opinion. Paragraph (9) of that order provides that if the tenant fails to make "any payments as hereinabove agreed" the landlord would be entitled, on a Motion for Entry of Judgment, to a judgment for rents which

had been waived by it pursuant to the agreement, together with attorney's fees and costs incurred "in filing this action and in pursuing a writ of restitution and additional Judgment pursuant to this Consent Order...."

present evidence on that issue when it appeared in court the morning its motion was scheduled to be heard by the court; therefore it was well within the proper exercise of the trial court's discretion to resolve the matter at that time without further delay. *See Lyons v. Jordan,* 524 A.2d 1199, 1203 (D.C. 1987). Moreover, it is not in the least bit clear that Camalier and Buckley ever requested a continuance in order to secure the presence of the witness it claims could have provided testimony on that point. Therefore, on the merits, with respect to this issue, I would vote to affirm outright. Doing so, however, would leave the court without a majority on this issue. In short, if I adhere to that view it

would leave us with no judgment of the court concerning future proceedings in this case. Reluctantly, therefore, I join Judge [Farrell's] proposed disposition remanding the case for further consideration by the trial court.

*Multi–Family Management, Inc. v. Hancock,* 664 A.2d 1210 (D.C.1995) (separate opinion of Farrell, J.).

### APPENDIX

### EXHIBIT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

Landlord and Tenant Branch

Sandoz & Lamberton, Inc., Plaintiff

v.

Camalier & Buckley, Inc., Defendant

L & T No. 17831–91

Calendar 1—Judge Salzman

*CONSENT ORDER AND JUDGMENT FOR POSSESSION*

The Clerk of the Court will please enter judgment for possession and for unpaid rent in the amount of $48,598.58 in favor of plaintiff Sandoz & Lamberton, Inc. (hereinafter, "landlord") by consent and note that the execution of said judgment will be stayed conditioned upon payment of rent and the arrearages by defendant Camalier & Buckley, Inc. (hereinafter, the "tenant") as follows:

(1) From January 1, 1992 to January 1, 1993, the reduced monthly rent shall be $7,533.75 and shall be due and payable on the first day of each month;

(2) From January 1, 1993 through January 31, 2000, the monthly rent shall revert to that amount reserved in the Lease, $10,045.00, as adjusted pursuant to paragraph 4 of the Lease, and shall be due and payable on the first day of each month;

(3) On January 1, 1992, the tenant shall pay $15,931.50 (reflecting credit for payments required and made under order of October 28, 1991) in real estate taxes due under the Lease. Upon payment of this amount, tenant shall be deemed current in all real estate taxes due and payable under the Lease to date.

(4) The tenant shall pay any real estate taxes which become due after January 1, 1992 pursuant to paragraph 5 of the Lease;

(5) The parties agree that the Judgment for the arrearage owed by the Tenant is $48,598.58. The tenant will repay that amount, plus interest running from April 1st, 1991 at an 8% annual rate, compounded monthly as follows:

(a) The amount of $10,000.00 shall be paid on or before January 1, 1992; the amount of $10,000.00 shall be paid on or before February 1, 1992;

(b) The amount of $5,000.00 shall be paid on or before March 1, 1992;

(c) The amount of $5,000.00 shall be paid on or before April 1, 1992;

(d) The amount of $10,000.00 shall be paid on or before November 1, 1992; and

(e) The amount of $8,590.58 plus accrued interest shall be paid on or before December 1, 1992;

(6) The tenant shall pay court costs of $13.75 on January 1, 1992.

(7) At all times hereafter during the period provided for payment and satisfaction of this Judgment, Landlord and Tenant shall abide by the terms of the Lease in all respects, except as specifically modified herein. If the tenant makes all payments required under paragraphs (1), (3), (4) and (5) between the time of the entry hereof and December 1, 1992, then upon the final payment due December 1, 1992, this Judgment shall be deemed fully satisfied and shall be of no further force or effect and, upon tenant's motion, shall be vacated and the case dismissed. Upon such full compliance, the relationship of the parties will be governed by the terms of the Lease, with each party hereby specifically affirming their rights and duties under the Lease.

(8) Upon failure of the tenant to make any payments as hereinabove agreed, through December 1, 1992 the landlord, upon filing an Application for Termination of Stay and with 5 days Notice to Defendant of L & T Form 5 and without further order of Court, shall be entitled to have this stay set aside and vacated, to have immediate issuance of a writ of restitution, and to have the right to take any action permitted under law to collect the Judgment herein.

(9) Also, upon failure of the tenant to make any payments as hereinabove agreed, upon filing of a Motion for Entry of Judgment with 5 calendar days notice to Tenant's counsel of record, Landlord shall be entitled to an additional Judgment for the following amounts:

(a) All unpaid rent and other liquidated Lease obligations accruing after the date of this Consent Order and Judgment for Possession and prior to the filing of the Motion;

(b) The rent reduction of $2,511.25 for each month in which it has been allowed;

(c) All attorney's fees and costs incurred by the landlord in filing this action and in pursuing a writ of restitution and additional Judgment pursuant to this Consent Order and Judgment for Possession.

The Motion for Judgment shall be accompanied by an affidavit setting out the additional amounts due. The Tenant may challenge the amounts claimed under Paragraphs 8(a) and 8(b) only by demonstrating payment of those amounts. The amount due under Paragraph 8(c) shall be awarded additionally in such amount as the Court determines is reasonable.

(10) The Landlord's rights under the Judgment are without prejudice to Landlord's right under the Lease in the event of a default by the Tenant and the retaking of possession by the Landlord to relet the demised premises at the risk and cost of the defaulting Tenant, whose default in no instance shall relieve it of liability for the difference between the rent reserved in the Lease and the rent under a bona fide Lease actually received by Landlord during the term remaining after such a default occurs. Any such difference in rental or other damages may, at the option of the Landlord, be recovered by her in separate actions, from time to time, as defendant's obligation to pay rent would have accrued if the term had continued, or from time to time as said difference and damages shall have been made more easily ascertainable by reletting of said premises, or such action by landlord may, at the option of the Landlord, be deferred until the expiration of the term. In the event of any such recovery of possession by Landlord, however, Landlord shall at Tenant's expense use her best reasonable efforts to relet the demised premises.

(11) In addition to the foregoing, the Court Registry shall immediately release to the landlord all sums paid into it by the tenant in this case.

/s/ Richard S. Salzman
    Judge Richard S. Salzman
    Judge Richard S. Salzman
    Signed in Chambers

WE ASK FOR THIS:

/s/ John J. Brennan, III
John J. Brennan, III, # 939066
Vernon W. Johnson, III, # 423756
JACKSON & CAMPBELL, P.C.
One Lafayette Centre
1120—20th Street, N.W.
Suite 300 South
Washington, D.C. 20036
Counsel for Plaintiff

/s/ Michael E. Brand
Michael E. Brand, #202085
LOEWINGER, BRAND & KAPPSTATTER, CH.
471 H Street, N.W.
Washington, D.C. 20001

COPIES TO:
John J. Brennan, III, #939066
Vernon W. Johnson, III, #423756
JACKSON & CAMPBELL, P.C.
One Lafayette Centre
1120—20th Street, N.W.
Suite 300 South
Washington, D.C. 20036
Counsel for Plaintiff

Michael E. Brand, #202085
LOEWINGER, BRAND & KAPPSTATTER, CH.
471 H Street, N.W.
Washington, D.C. 20001

