**Andrew SHAPIRO, et al., Appellants,**

v.

**Paul S. TAUBER, Appellee.**

No. 88–788.

District of Columbia Court of Appeals.

Argued March 23, 1990.

Decided May 30, 1990.

B. Michael Rauh, with whom Carroll D. Hauptle, Jr., Washington, D.C., was on the brief, for appellants.

Eric Sayles, Washington, D.C., for appellee.

Before NEWMAN, FERREN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In this appeal from an order of the Superior Court awarding possession of certain

**3.** *See* Va.Code Ann. § 8.01–243 (1989 Supp.).

commercial rental property to the landlord, we conclude that further proceedings are necessary by the trial court to ascertain the intent of the parties in agreeing to the now-disputed portion of a lease and, contingently, to consider lesser remedies for the alleged breach than forfeiture.

Tauber, the owner of the store-front property, filed suit for possession in the Landlord and Tenant Branch alleging that the defendant-tenants, by blocking and cementing over three street-level windows, had breached a provision in the lease requiring the landlord's permission before any "structural changes or alterations" could be made.[1] The tenants, while conceding that they covered the windows, argued that given the poor condition of the windows and the immediate hazard they posed to the tenants' bakery business, their action constituted a "repair" that the lease authorized them to undertake. In awarding possession to Tauber after a bench trial, the court stated:

> *Defendant concedes that conditions of the lease were breached* yet asserts that the controlling repair terms in the lease were unclear. The court finds the terms and conditions of the lease are unambiguous and that Defendants had ample opportunity to cure the broken conditions of the lease or raise affirmative defenses to the breach. Defendants did not restore the premises to its original condition nor did the defendants raise affirmative defenses to the breaches. [Emphasis added.]

Having assumed that the tenants conceded a breach, the court did not have to decide whether the removal of the windows had in fact breached the clause forbidding structural changes. The court did "find[ ] that the terms and conditions of the lease are unambiguous," presumably meaning that it had been breached, but we are unable to treat this as a factual finding given—as we shall see—the court's erroneous assumption that a breach had been conceded. On appeal, the tenants deny that they made any such concession and contend that the court erred in awarding possession to Tauber without expressly finding that a structural change or alteration had been made. They further contend that even if a breach was committed, forfeiture of the premises was too drastic a remedy on the facts of this case.

Since we are unable to find in the record a concession by the tenants that they breached the terms of the lease, we must reverse the trial court's decision and remand for a determination whether cementing over the windows was a structural change or alteration within the terms of the lease. We hold further that if, on remand, the tenants are found to have breached the lease, the court must consider alternative remedies because forfeiture would be an excessive remedy in the circumstances of this case.

## I. Breach

On January 31, 1986, Tauber leased the ground floor and basement of the building in question to a corporation controlled by Len Weiss, who opened an ice cream parlor on the premises. The lease term was for ten years with provision for three five year options to renew. The relevant portions of the lease provided:

> 6. Tenant will make any and all repairs to the premises hereby leased during the term of this lease.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 28. Tenant will not make any structural changes or alterations in the premises hereby let ... without the written consent of the landlord....

During his tenancy, Weiss, with Tauber's consent, divided the first floor in half[2] and sub-leased the unused and unrenovated portion to an antique dealer who abandoned the premises shortly thereafter. In April of 1986, Weiss, with the consent of Tauber, sold his business along with the

---

1. Tauber also alleged other violations of the lease including the erection of a large neon sign on the outside of the building. These disputes, however, either were resolved or were not pursued at trial.

2. Tauber had given his verbal approval for this renovation as well as for later changes to the interior of the premises.

lease to another corporation controlled by Andrew Shapiro for approximately $58,-000.[3] Shapiro then sublet one part of the property to Masoud Mossadegh, who continued operating the ice cream business as the Inside Scoop,[4] and the other part to Hector Quinteros who planned to open a bakery. Since only the half of the premises housing the Inside Scoop had been renovated, Quinteros spent some $8,000 setting up his bakery. In the course of this renovation, Quinteros removed bars from three of the four windows that faced a side alley, and had these windows cemented over.

On March 19, 1987, after discovering that the windows had been removed, Tauber sent a letter to Shapiro stating that he considered the tenants to be in violation of clause 28 of the lease and demanding that the windows be restored to their previous condition within ten days. When Shapiro failed to comply, Tauber filed this action for possession on April 7, 1987.

At trial, Quinteros and Shapiro testified that before the renovation all of the window panes had been broken and were covered with plywood, cardboard, or rags. They complained that garbage was often left on the window ledge or thrown through the window itself, and that they were concerned for the security of the premises and their equipment. They maintained that removal of the windows was essentially a "repair" of the premises and one necessary to enable Quinteros to operate his bakery. Nowhere in their testimony did they concede a breach of the agreement. On the contrary, at the close of Tauber's case they sought a directed verdict on the ground that he had failed to present evidence on whether removal of the

windows was a structural alteration and hence a violation of the lease. In a post trial memorandum answering a question posed by the court,[5] the tenants argued that "[t]his case involves an honest dispute about the interpretation of a lease," including a dispute over how the terms "structural change" and "alteration" should be defined. They renewed their argument that Tauber had failed to establish a breach. In their reply to Tauber's memorandum, they reiterated that from the inception of the case they had "contend[ed] that no breach existed." On appeal, the parties continue to dispute whether removal of the windows breached the agreement, each advancing a nonfrivolous interpretation of the phrase a "structural change or alteration" to support his position.[6]

In these circumstances, the question whether or not removing the windows was a "structural change or alteration" violating clause 28 was a material issue in dispute and required resolution by the trial court.[7] Contrary to the court's reasoning (possibly influenced by its mistaken finding of a concession), we cannot hold that the disputed clause is unambiguous. Rather, we conclude that interpreting it "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." *Holland v. Hannon*, 456 A.2d 807, 815 (D.C.1983). *See also Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988). This court is not equipped to make that determination and, absent findings on the issue by the trial court, we cannot conduct a meaningful review. So we must reverse the trial court's decision and remand for further findings. *See Tauber v. District of Columbia*, 511

---

3. In addition, Shapiro assumed responsibility for certain outstanding debts totalling $7,500.

4. Mossadegh had apparently invested some $55,-000 in that establishment.

5. The trial court had sought memoranda from the parties on whether Tauber had waived his right to terminate the lease and seek possession by accepting rent while the case was pending. The court ultimately ruled that no waiver was intended, and that ruling has not been appealed.

6. Tauber argues that the clause was intended to include any addition that changes the essential

character of the building. The tenants contend that the clause only applies to those changes or additions which affect the load-bearing elements of the structure.

7. We can only assume that the trial court was misled by the defendants' statement in their post-trial memorandum relating to the secondary issue of remedy: "Assuming, *arguendo*, that a breach of one or two of the covenants occurred ... this does not suffice to force a termination of the lease."

A.2d 23, 28 (D.C.1986) (trial court's failure to make findings on material issues requires remand). The trial court, in its discretion, may call for additional evidence on the issue.[8]

## II. Forfeiture

█ If, on remand, the trial court determines that removal of the windows violated clause 28 of the lease, it must revisit the issue of remedies. On the record before us, we conclude that the alleged breach, even if proven, would not justify forfeiture of the lease. In awarding possession to Tauber, the trial court cited *Entrepreneur Ltd. v. Yasuna*, 498 A.2d 1151 (D.C.1985), and found that because the tenants' actions causing the breach "were overt and deliberate," Tauber was "not estopped from claiming forfeiture based on the breach of the lease terms." It is true that *Yasuna* identified as one factor justifying forfeiture the fact that a breach has been willful or deliberate rather than "committed by inadvertence or mistake." *Id.* at 1161. The tenants do not dispute that they acted deliberately (and "openly") in cementing over the windows. But we pointed out in *Yasuna* that forfeitures are a "harsh and disfavored sanction" and " 'will not be enforced' unless 'there are circumstances which make them reasonably proper for the protection of rights which would be otherwise impaired'." *Id.* at 1164 (citation omitted). We indicated that we would look to circumstances such as whether the event triggering the right to forfeiture was "clearly defined" in the agreement, *id.* at 1160, whether the tenant acted in good faith despite the breach, *id.* at 1164, whether "there existed alternative and less drastic means to make the landlord whole," *id.* at 1161, and ultimately whether enforcing the forfeiture would be "unconscionable". *Id.* at 1160.

As our previous discussion makes clear, the tenants blocked and cemented over the windows relying in good faith upon a reading of the lease that was not plainly unreasonable, though it may prove to be mistaken. There is thus none of the willfulness—in the sense of disregarding a "clearly de-

fined" obligation—or bad faith that *Yasuna* deemed significant in justifying forfeiture. *Id.* at 1164. Moreover, it is apparent that forfeiture would result in severe hardship to both the tenants and subtenants, one of whom—Mossadegh—had nothing to do with the alleged breach. This action was filed only one year after Shapiro was assigned the lease in exchange for approximately $65,000, and only fifteen months into a twenty-five year lease. Relying on the lease, both Quinteros and Mossadegh had invested a substantial amount of money in their respective businesses.

Most important, perhaps, is that alternative remedies exist to make Tauber whole if the lease was breached. Tauber contends that "[f]orfeiture is the only remedy available to the Plaintiff in a Landlord–Tenant action for breach of contractual obligations." But the remedial powers of the judge in the Landlord and Tenant Branch are not so constricted. Rather, the judge's authority to award possession must rationally include the lesser power to require restoration of the premises to the condition called for by the lease—precisely as an alternative to the disfavored remedy of forfeiture. It would be both grossly inefficient and against the equitable grain of Landlord and Tenant proceedings to require the judge, in a matter such as this, to deny the landlord possession and remit him to the filing of a separate suit in the Civil Division for what amounts to specific performance. The record confirms that the windows in question could have been replaced in ten to twenty days at a cost of under $1,000. If the tenants desire to retain possession, and the court finds a breach, that remedy is available to fully rectify the alleged breach.

Accordingly, the judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**8.** We reject appellants' argument that the court erred in not granting their motion for dismissal at the end of plaintiff's case. Super.Ct.Civ.R. 41(b) (1989).