**SUITLAND PARKWAY OVERLOOK TENANTS ASSOCIATION, Appellant,**

**v.**

**Minnie COOPER, Appellee.**

**No. 91–CV–181.**

District of Columbia Court of Appeals.

Argued Oct. 23, 1992.
Decided Nov. 20, 1992.

Henry T. Keegan, with whom Ana I. Fabregas, Annapolis, Md., was on the brief, for appellant.

Adam H. Gordon, student counsel, with whom R. Bradley Koerner and Charles D. Cosson, student counsel, and Peter H. Meyers, Supervising Atty., Washington, D.C., were on the brief, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellant Suitland Parkway Overlook Tenants Association (hereafter "the landlord") brought suit in March 1990 against appellee, a tenant, for possession of her apartment because of alleged failure to pay rent. The parties then entered into a series of consent judgments, *see* Super.Ct. L & T R. 11–1 (1992), which were stayed so long as appellee (hereafter "the tenant") complied with the terms of agreements contained therein. The trial court denied the landlord's application to vacate the stay after the tenant failed to pay her November 1990 rent on time as provided in the agreements. Primarily on the strength of *Moore v. Jones*, 542 A.2d 1253 (D.C.1988), we reverse and remand with directions to vacate the stay.

## I.

The landlord filed its suit for possession on March 16, 1990, alleging that the tenant had failed to comply with a previous Notice to Cure Violation of Tenancy or Vacate served upon her for failure to pay the rent as required by her lease. On April 11, 1990, the initial hearing date in court, the parties presented to the court a signed praecipe entering judgment of possession for the landlord by consent but providing that judgment would be stayed if the ten-

ant met two conditions. First, she agreed to pay the current two month arrearage in her rent by specified dates. Second, she agreed that for the next twelve months beginning May 5, 1990, she would pay the monthly rent by the fifth day of each month. Upon a failure of either condition, the landlord was entitled to have the stay vacated and a writ of restitution issued. Judge Rufus G. King, III, explained the agreement to the tenant in court, including the condition that the "rent has to be on time every month" during the agreed period. The tenant replied that she understood, and Judge King approved the judgment.

On June 5, 1990, the parties presented to the court a revised consent judgment praecipe which amended the earlier judgment by extending the time for payment of the tenant's June rent until June 8. The agreement again stayed the judgment of possession provided that from July 1990 to June 1991 the tenant paid the monthly rent by the fifth day of each month. This time the agreement stipulated, in language specially inserted, that "[t]ime is of the essence" and that it was "the express understanding of the parties that the landlord would not have entered into this agreement but for the promise of the tenant(s) to pay rent on a timely basis and that the failure of the defendant to make timely payment as agreed herein shall be deemed as a noncurable breach of this agreement." Judge William C. Gardner explained the agreement fully to the tenant, in particular her obligation "[f]or a whole year to pay your monthly rent ... on or before the 5th day of each month," failing which the stay would terminate upon 48 hours' notice and "you will not be able to redeem your tenancy by ... tendering all of the ... past due rent." In response to the judge's question, "Is that the agreement you wish to make," the tenant stated "yes." Judge Gardner thereupon approved the agreement.

The tenant failed to pay the September 1990 rent on time and was served with an application for termination of the stay of judgment. On October 11, 1990, however, the parties filed with the court a third consent judgment praecipe which extended the time for the tenant's September and October rent payments until October 19 and 31, respectively. The praecipe also contained typewritten provisions which stated "that amending this agreement has not changed any of the terms and conditions stated in pages 3–5 of the original 6/5/90 agreement," [1] whose "terms are in full force and effect," and that the landlord would "not consent to any further amendments to this agreement." Pursuant to Super.Ct. L & T R. 11–1, the Interview and Judgment Clerk approved the consent judgment.

The tenant nonetheless failed to pay her November rent by November 5, and the landlord served her with another application to vacate the stay of judgment. At a hearing on January 25, 1991, before Judge Nan R. Huhn, the tenant claimed—and the landlord did not dispute—that when she had become aware she would be unable to pay the November rent on time, she requested aid under the District of Columbia Emergency Assistance Program (EAP), and on November 5, 1990, an EAP administrator called the landlord "saying they would be paying." The EAP then tendered the rent on or about November 15, 1990, but the landlord refused to accept it. The landlord later declined to accept the tendered December and January rent as well.

Judge Huhn denied the application to vacate the stay of judgment, in essence ruling that the tenant's failure to pay the November rent on time was a "de minimis" violation of the consent judgment and that "equitable principles" counseled against forfeiture of her tenancy, citing *Shapiro v. Tauber*, 575 A.2d 297 (D.C.1990).

## II.

In *Moore v. Jones, supra,* the trial court had refused to vacate a consent judgment which embodied an agreement that the tenant, who had fallen behind in her rent for a house, would purchase the house within a specified time or else move out. Instead

---

1. Those pages had included the tenant's duty to pay the rent by the fifth day of each month.

the trial court allowed the tenant to redeem the tenancy by paying the overdue rent plus costs, relying on the court's equitable authority under *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.1947).[2] We reversed, holding that the trial court's decision "effectively modified the terms of the consent judgment," an action "beyond the court's authority." *Moore*, 542 A.2d at 1254. We explained that

> [a] consent judgment is an order of the court, indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order. It is also a contract, which must be construed within its four corners. It should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake.

*Id.* (citations and internal quotation marks omitted). We observed that allowing the tenant to continue her tenancy by paying the sum due "[o]rdinarily ... would be routine," but that "here ... it directly conflicts with the consent judgment, which is presumptively valid and hence enforceable." *Id.* at 1255. We concluded the policy considerations supporting a *Trans–Lux* redemption were insufficient to outweigh the importance of enforcing valid consent judgments:

> Since the landlord's original suit for possession and back rent was settled, and a consent judgment was entered embodying the settlement, this case also involves the public policy that "[v]oluntary settlement of civil controversies is in high judicial favor." To encourage voluntary settlements, settlement agreements should not be modified in favor of either party, absent the most compelling reasons.

*Id.* at 1255 (citation omitted). As there was no evidence that the tenant had been "in any way tricked or coerced into agreeing to vacate the premises if she did not follow through on the purchase," *id.* at 1256 n. 3,

we held that "the consent judgment and the contract appended to it must be enforced as written, like any other contract, since there is no lawful reason for refusing to enforce them." *Id.* at 1256.

 The landlord contends that *Moore* is functionally indistinguishable from this case, where the trial judge—partly on equitable grounds—refused to vacate the stay as a result of the failure to pay the November rent on time. The tenant responds that this case is unlike *Moore* because the trial judge here, far from "modifying" the October 11 judgment, expressly admonished the tenant that she would continue to be bound by its terms as written; the judge merely found the November breach to have been insubstantial ("de minimis") and insufficient to justify forfeiture. We agree with the trial judge that forfeiture is a harsh and disfavored remedy, *see Shapiro v. Tauber*, 575 A.2d at 300; *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1164 (D.C. 1985), but we conclude that the judge was no more at liberty to disregard the explicit terms of a consent judgment here than was the trial judge in *Moore*. Indeed, not enforcing the agreement in the circumstances of this case would undercut everything we said in *Moore* about the presumptive validity "and hence enforceab[ility]" of consent judgments. *Moore*, 542 A.2d at 1255.

The October 11 judgment obligated the tenant to *pay* the November rent by November 5, not simply to give assurances (through EAP) that it would be paid in the near future. Moreover, the November violation cannot be viewed in isolation. As early as April 1990, the tenant had consented to the first judgment of possession if she made any rental payment late during the next year. In June she again consented to judgment in return for an extension of the date for paying that month's rent, this time agreeing that time was of the essence of her duty to pay timely during the next twelve months.[3] She consented to

---

2. "Under the *Trans–Lux* line of cases, a court may relieve a tenant from forfeiture of a lease if the tenant tenders all money owing under the lease. Such relief is equitable in nature...." *Kaiser v. Rapley*, 380 A.2d 995, 997 (D.C.1977).

3. *Cf. Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313 (D.C.1982) (where time is contractually stipulated to be of the essence, modification of time of settlement "is a material

a third judgment in October in a decree extending the deadline for the September and October payments and expressly incorporating her June obligations. All three consent judgments were approved by the trial court. The tenant then failed to pay the November rent on time. Were we to excuse this failure as insubstantial or *de minimis,* we would render the succession of consent judgments largely meaningless. By allowing the tenant to pay the November rent after it was due, the trial judge modified the parties' agreement as effectively as had the trial court in *Moore.*

■ The tenant cites the fact that the October 11 consent judgment was explained to her by an Interview and Judgment Clerk rather than a judge, pointing to this court's statement in *Moore* that "[c]ourt approval of a consent decree means the *court* has concluded that the terms of the decree are not unlawful, unreasonable, or inequitable." 542 A.2d at 1254 n. 1 (emphasis added). Rule 11–1(a) of the Landlord and Tenant Rules expressly allows the Interview and Judgment Clerk to "[e]nter judgment by consent without judicial approval upon the filing of an executed L & T Form 4 praecipe" (as was done here), provided the "Clerk has ascertained to his satisfaction that (i) the

consent judgment was executed by the defendant after the complaint was filed; (ii) that the defendant has received a copy of the consent judgment praecipe; and (iii) that the defendant understands the nature and consequences of his agreement...." Hence the tenant's real argument appears to be that the Clerk did not perform his duty properly by insuring that she understood that the payment schedule in the October decree was "significantly more onerous" than in the previous agreements since it required her to make three payments within eighteen days.[4] Once more, however, the October agreement cannot be considered in isolation. In effect it consisted of a unilateral promise by the landlord to extend the time for payment of the September and October rent, for in return the tenant merely acknowledged her existing duty to pay the rent by the fifth day of each month through June 1991. Since the tenant never challenged the validity of the June judgment (and does not do so here), refusal to accept the October extension would have left her defenseless to an order vacating the stay of judgment.[5]

■ The tenant further contends that the circumstances of this case satisfy the "compelling reasons" test of *Moore* for re-

---

change of the original contract which cannot be accomplished without a writing").

It is true, as the tenant points out, that the June consent judgment contained the pre-printed statement that, "[u]pon payment being made as above"—*i.e.,* the June rent being paid by June 8, 1990—"a *permanent* stay of execution shall automatically be entered" (emphasis added). But under settled principles, this standard, pre-printed clause was subordinate to the provision inserted by the parties permitting termination of the stay if the tenant failed to pay the monthly rent by the fifth day of the month for the next year. *Craven v. Elmo,* 442 A.2d 526, 528 (D.C. 1982).

4. That is, the tenant was required to pay the September rent by September 19, the October rent by October 31, and—as provided in the incorporated June agreement—the November rent by November 5. The Clerk explained the agreement to the tenant as follows:

> Ms. Cooper, you entered into a consent—an amended consent judgment for possession. Your landlord, however, will not take possession provided you make the necessary payments within this agreement, plus a—plus

your late—late fees. Now, if you fail to make any of the payments within this agreement on these specified dates, your landlord will send you a forty-eight hour written notice in the mail informing you that they're going to file papers to have you set out. And there's a notation that the plaintiff will not consent to any further amendments under this agreement. Do you understand this agreement? The tenant stated "yes" and that she had no questions.

5. The tenant contends, in a point raised for the first time at oral argument, that the second typewritten provision added to the October 11 consent judgment could have misled her (without further clarification by the court) into believing she was not required to pay the November rent on time as long as the landlord received assurances by November 5 that the EAP would make the payment in the near future. Even as a layperson, however, the tenant could not reasonably have understood the provision in that fashion, as it read simply: "Tenant remains primarily responsible for all payments due herein notwithstanding any tenant request for Emergency Assistance."

lieving a party of the consequences of a consent judgment. Although we sympathize with the financial plight the tenant describes that made compliance with the successive judgments impossible, *Moore* leaves no doubt that the compelling reasons it referred to require "a showing of good cause to set ... aside [the judgment], such as fraud, duress, or mistake." *Moore*, 542 A.2d at 1254. The court pointed out in *Moore* that the tenant had "not allege[d] that she was in any way tricked or coerced into agreeing" to the consent judgment. *Id.* at 1256 n. 3. Nor does the tenant assert such circumstances here.[6] In general, "[i]nability to pay rent is not a defense to a suit for possession." *Pritch v. Henry*, 543 A.2d 808, 812 (D.C.1988). Even less so would we be justified in allowing financial hardship alone to excuse noncompliance with a valid consent decree.

■ Finally, the tenant's reliance on *Shapiro v. Tauber, supra,* is misplaced. That case involved interpretation and enforcement of a lease provision, not a consent judgment. We reversed a decision for the landlord and remanded, first, for addi-

tional findings by the trial court on whether the lease had been violated and, if so, for imposition of a remedy—which the record showed to be available—that would make the landlord whole without necessitating forfeiture. *Shapiro*, 575 A.2d at 299–300. Though we adverted to "the equitable grain of Landlord and Tenant proceedings" in rejecting the argument that the Landlord and Tenant Branch was powerless to fashion a remedy other than forfeiture, *id.* at 300, the quoted statement cannot be read broadly to imply an equitable authority in the trial court to modify a consent judgment where none of the compelling reasons required by *Moore* is present.

The order of the Superior Court is reversed, and the case is remanded with directions to vacate the stay of judgment.

*So ordered.*

---

**6.** To suggest, as the tenant does, that among the compelling reasons here is the "especially oner-

ous schedule of payments" in the October judgment is to repeat the argument just rejected.