**TSINTOLAS REALTY COMPANY,**
Appellant,

v.

**Maria L. MENDEZ, et al., Appellees.**

No. 08–CV–730.

District of Columbia Court of Appeals.

Argued Sept. 24, 2009.

Decided Nov. 25, 2009.

---

**10.** D.C. Bar R. XI, § 5(c)(1) (2008).

**11.** D.C. Bar R. XI, § 12.1(c)(2) (2009) (emphasis added).

**12.** *Id.*

Suzanne M. Tsintolas, with whom Jonathan C. Windle was on the brief, for appellant.

Kenneth J. Nichols, with whom John H. Brown was on the brief, Washington, for appellees.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

Tsintolas Realty Company (the landlord) appeals from an order of the Superior Court granting the motion of Maria L. Mendez and Oscar A. Aragon (the tenants) to enforce a settlement agreement which had resolved a suit by the landlord for possession of the apartment occupied by the tenants in northwest Washington, D.C. The landlord asserts that the tenants are not entitled to relief because they committed a material breach of the settlement agreement. The landlord also contends that the agreement left unresolved certain of its claims and that the trial judge erred in holding to the contrary. We reject the first of these contentions, agree with the second, and remand for further proceedings.

## I.

### Procedural and Factual Background

On October 3, 2007, following a building-wide inspection of an apartment building located at 5400 Seventh Street, N.W. in Washington, D.C., the District of Columbia Department of Consumer and Regulatory Affairs (DCRA) issued an order directing the owner of the building to correct numerous housing code violations which had been discovered by DCRA inspectors. There were thirty-three violations in apartment # 3, which was occupied by Ms. Mendez and Mr. Aragon. Ms. Mendez had been a tenant of the unit for fourteen years.

On October 31, 2007, the landlord served a Notice to Correct or Vacate on the tenants. In the notice, the landlord alleged numerous violations of the tenants' lease, including, *inter alia*, the intentional destruction of property inside the unit and damage to the floors and walls. The landlord further alleged that the tenants had failed to inform the landlord in timely fashion of the need for repairs, thus causing further property damage. Finally, the landlord claimed in the notice that the tenants had failed to pay invoices for repairs of conditions which had allegedly been caused by the tenants' negligence. In the notice, the landlord advised the tenants, among other things, that within thirty days, they would have to make or pay for repairs in order to come into compliance with the lease.

The tenants neither corrected the alleged violations nor vacated the apartment, and on December 4, 2007, after the Notice to Correct or Vacate expired, the landlord filed a complaint for possession. At a hearing on January 18, 2008, the court

issued a protective order which authorized the tenants to pay their rent into the court registry pending resolution of the case.

On February 15, 2008, before the case could come to trial, the landlord entered into a settlement agreement with the tenants. Under this agreement, the tenants consented to the entry of judgment for possession in favor of the landlord, but the judgment was to be stayed until April 30, 2008. As part of the settlement, the tenants agreed that the February rent, which they had paid into the registry, would be released to the landlord. The landlord agreed to pay the tenants an amount which was set forth in the settlement agreement and which was to be paid when the tenants vacated their unit and otherwise complied with the agreement.

The settlement agreement further provided that the tenants had until April 30, 2008 to vacate their unit and that they would be responsible for paying the rent until that date. However, the agreement also provided an incentive for the tenants to move out of their apartment sooner: if they vacated no later than March 31, and if they gave notice to the landlord of their intention to do so no later than March 5, then the tenants would not be required to pay rent for the month of March (as well as for April). If the tenants did not vacate their unit before April 1, however, the rent for March and April was to be subtracted from the agreed upon amount that the landlord was required to pay the tenants under the terms of the settlement. The agreement also provided that after the tenants surrendered possession, the landlord would cause the complaint to be dismissed.

The settlement agreement also contained a confidentiality provision prohibiting the tenants from divulging the terms of the settlement. Under this provision, the landlord was entitled to recover the entire settlement amount from the tenants if the tenants divulged the terms of the agreement. Judge Joan Zeldon approved the settlement, and she explained to Ms. Mendez and Mr. Aragon in open court that the "the terms of this agreement are confidential" and that "the divulging of these terms is a material breach.... If you talk about this to anybody this whole agreement is in breach." The judge added that "[y]ou must keep this confidential [a]nd if [the landlord] learns that you didn't, he can say I don't agree to any of it." Finally, after both tenants assured the court that they understood their obligations, the judge reiterated that "it's particularly important that you not talk about this."

During the hearing, the judge read the settlement agreement (including the amount which the landlord had agreed to pay the tenants) aloud in open court. Without objection, the judge approved the agreement. The praecipe containing the agreement was filed with the court and became a part of the case jacket. So far as the appellate record reveals, no party moved at that time to seal the settlement agreement or the case file. Indeed, the first indication that the landlord wished to have the record sealed came several months later, when counsel for the landlord requested that the landlord's response to the tenants' motion to enforce the settlement agreement be filed under seal.

Judge Zeldon informed the parties at the conclusion of the February 15 hearing that the complaint had been resolved, and that for administrative purposes, the case was considered closed. She explained, however, that in the event of an alleged breach of the settlement agreement, either party had the right to move to reopen the case.

Ms. Mendez and Mr. Aragon vacated their apartment, as agreed, prior to April 30, 2008. They also provided the landlord

with the required timely notice of their intention to do so. The landlord, however, refused to make the payment specified in the agreement. The landlord initially refused to pay on the stated grounds that the tenants had failed to provide the landlord with an IRS Form W–9, which would be required by the Internal Revenue Service, according to the landlord, in the event the payment specified in the settlement agreement was made to the tenants. On April 23, 2008, the tenants filed a motion to reopen the case and to enforce the settlement agreement. A copy of the agreement was attached as an exhibit to the motion.

On April 25, 2008, the landlord sent the tenants a written demand for $6,493.60, representing the March and April rent and other claimed costs associated with unpaid invoices and alleged physical damage to the apartment. A few days later, on May 6, 2008, the landlord filed a separate action for breach of contract in the Civil Division of the Superior Court, once again seeking payment of the March and April rent and the other alleged damages. The landlord voluntarily dismissed the separate action, however, after Judge Gerald Fisher, who had replaced Judge Zeldon in the Landlord & Tenant Branch of the Superior Court's Civil Division, ruled that the landlord was entitled to rent for March and April, but that the landlord's claim for alleged damage to its property had been resolved in the tenant's favor by the settlement agreement.

## II.

### The Trial Court's Decision

Judge Fisher heard the tenants' motion on May 16 and 22, 2008. The tenants testified that they vacated their apartment prior to March 31. Judge Fisher, however, disbelieved this testimony, describing a part of it (a claim that the tenants had only

one set of keys) as "almost preposterous." Instead, the judge credited evidence on behalf of the landlord to the effect that Mr. Aragon was in the apartment several times in early April. The judge therefore ruled that the landlord had the right to subtract the March and April rent from the payment required by the settlement agreement.

On the merits, the judge held that under the circumstances of the case, the tenants did not commit a material breach of the confidentiality provision by appending to their motion a copy of the settlement agreement, and that the landlord was not relieved on its obligations under the agreement on the grounds that the tenants had violated it. Judge Fisher also concluded that the landlord was not entitled to reduce the settlement amount by unpaid invoices and by damage to the apartment for which, according to the landlord, the tenants were responsible. The judge held that these claims had been asserted in the Notice to Correct or Vacate, which was attached to the landlord's complaint for possession, and that any issues relating to damage to the property had been resolved, as an integral part of the case, by the parties' settlement agreement. This appeal followed.

## III.

### The Claim of Material Breach by the Tenants

■ Responding to the tenants' claim that the landlord failed to comply with the settlement agreement, the landlord contends that the tenants themselves committed a material breach of that agreement by attaching a copy of the agreement to their motion to enforce, allegedly in violation of the agreement's confidentiality provision. It is the landlord's position that this alleged material breach by the tenants nulli-

fied the landlord's obligations set forth in the settlement agreement. We do not agree.

■ The facts regarding this issue are undisputed, and we review the trial court's legal conclusions *de novo*. *In re A.C.G.*, 894 A.2d 436, 439 (D.C.2006). The landlord argues that the Superior Court case jacket is a public record, and that by causing a copy of the agreement to be placed in the jacket in conjunction with their motion to enforce, the tenants effectively made the document available to any member of the public who cared to examine the file. Although plausible in theory, this contention founders on the record now before us.

The landlord asserts in its brief on appeal that, at the conclusion of the hearing before Judge Zeldon, "the Agreement was then ordered sealed pursuant to the confidentiality clause of the Agreement." The record citation offered in support of this assertion, however, contains no mention or indication of such an event. Indeed, three months later, when he presided over the tenants' motion to enforce, Judge Fisher remarked that the settlement agreement was "part of the case jacket." In other words, the agreement had been a matter of public record for several weeks before the tenants filed their motion, just as it was on the day after they filed it.[1] Moreover, and without objection, Judge Zeldon had read the terms of the settlement agreement, including the amount to be paid to the tenants, aloud in open court.

The landlord was the proponent of the confidentiality provision of the agreement, but for several months, so far as the record shows, it took no action to prevent the agreement from becoming, and remaining, a part of the case jacket. It is undisputed that counsel for the tenants subsequently "consented without discussion" to the sealing of the briefs on appeal in this case, and there is no reason to believe that a similar request would have been opposed by the tenants if the landlord had presented such a motion to the trial court. It therefore appears that the presence of the agreement in the Superior Court's case file resulted as much from the landlord's apparent carelessness and passivity as from the tenants' arguably improvident disclosure of it in connection with their filing of the motion to enforce.

■ The gravamen of the landlord's claim is that by their alleged violation of the confidentiality provision (which, under the agreement, constituted a material breach), the tenants forfeited their right to the agreed upon settlement amount. But "equity abhors forfeitures ... [and] so indeed does the law." *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). Like *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997), "this case falls within the 'no harm no foul' rule." To paraphrase an analogous passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),

---

1. In its brief, the landlord asserts that "[i]t is undisputed that a copy of the Confidentiality Agreement was attached to the Motion, which necessarily caused all the terms of the Agreement to *become* fully accessible to the general public, including Mendez/Aragon's neighbors who possessed knowledge of their neighbors' legal action." (Emphasis added.) This sentence, and especially the word "become," are, at the very least, somewhat misleading.

At oral argument before this court, counsel for the landlord represented that at the con-

clusion of the hearing, Judge Zeldon directed the clerk to place the settlement agreement under seal. There is nothing in the record to support this assertion, however, and the landlord has made no attempt to supplement the record. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (holding that it is incumbent on an appellant to provide this court with a record sufficient to show that error occurred).

[t]he no-harm-no-foul rule of the basketball court should be applied in this law court. Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

■ To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach. *See San Carlos Irrigation & Drainage District v. United States*, 877 F.2d 957, 959 (Fed.Cir. 1989). "It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira*, 107 F.3d at 473 (citing *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque damno*," *Cagle v. Southern Bell Tel. & Tel. Co.*, 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977) *i.e.*, "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira*, 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)). In other words, although adherence to the confidentiality provision was a significant obligation imposed on the tenants by the settlement agreement, the discernable consequences to the landlord of the tenants having attached a copy of the agreement to the motion were nil. A

citizen who examined the case jacket before the tenants' motion was filed would have had access to the settlement agreement, and the filing of the motion just added a second copy. Nothing really changed.

■ At oral argument, counsel for the landlord claimed that the lack of injury made no legal difference. She insisted that if the tenants caused a copy of the agreement to be placed in the public record, then this was a material breach, and the tenants forfeited all of the relief due to them under the agreement, regardless of whether the terms of the agreement had previously been publicly disclosed. In response to a hypothetical question posed by a member of the court, counsel stated that, upon filing a copy of the settlement agreement with their motion, the tenants would be disqualified from enforcing the agreement even if the document had been published on the front page of the Washington Post and if it had been read by 500,000 people. "Proportionality is of consummate importance in judicious adjudication," *Allen v. United States*, 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied*, 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992), and the landlord's position is, in our view, unpersuasive and contrary to common sense, as well as to the authorities we have cited. We therefore conclude that the tenants' filing of the settlement agreement with their motion to enforce does not bar their claim for relief.[2]

---

**2.** The trial judge held that the tenants' alleged breach of the confidentiality provision was unintentional and easily remedied, and that it therefore did not warrant extinguishment of the landlord's obligation to make the payment required by the settlement agreement. Neither the judge nor counsel for the tenants have cited any authority for the proposition that a breach of contract must be intentional in order for the non-breaching party to recover, and we know of none. The elements of breach of contract do not include intent, *see San Carlos Irrigation Drainage District*, 877 F.2d at 959, and an unwitting breach, *e.g.*, a breach by a party who has not read the agreement, is actionable. *See, e.g., Diamond Housing Corp. v. Robinson*, 257 A.2d 492, 493 (D.C.1969); *Hollywood Credit Clothing Co. v. Gibson*, 188 A.2d 348, 349 (D.C.1963). Indeed, at common law, as expressed in the Second Restatement of Contracts, the intent to breach is largely irrelevant. Oren Bar–Gill

## IV.

## The Alleged Damage to the Landlord's Property

■ The landlord contends that even if, as we have held, the tenants did not commit a material breach of the settlement agreement by disclosing its terms, the trial judge erred by holding that the agreement precluded the landlord from suing for physical damage to its property allegedly caused by the tenants. We are constrained to agree.

The lawsuit that was resolved by the settlement agreement was a conventional action by the landlord for possession of the premises. In its complaint, which is on a printed form which accompanies the Rules of the Landlord & Tenant Branch, and which is in regular use in that Branch, the Landlord prayed for a judgment of possession, for unidentified fees and costs, and for a protective order. No other relief was requested.

■ The reason why the landlord did not ask in its complaint for any remedy beyond that printed on the complaint form is simple and straightforward: a judge sitting in the Landlord & Tenant Branch of the Civil Division lacked authority to award any other relief. This is because the jurisdiction of the Landlord & Tenant Branch is limited to "summary proceedings for possession." *See* Super. Ct. L & T R.1. To ensure that actions for possession proceed swiftly and in summary fashion, "the rules governing the Landlord & Tenant Branch narrowly and specifically limit its reach." *Barnes v. Scheve*, 633 A.2d 62, 64 (D.C.1993). In an action for possession, the landlord's remedy is limited to a judgment of possession, recovery of property located on the premises, and a money judgment based on rent in arrears. *Id.* (citing L & T Rules 1 and 3). All other tort and contract claims, including requests for money damages not based on rent in arrears, must be filed separately in the Civil Division. *See, e.g., Pinzon v. A & G Props.*, 874 A.2d 347, 351 (D.C.2005); *Killingham v. Wilshire Inves. Corp.*, 739 A.2d 804, 808 n. 2 (D.C.1999).

■ As we recently stated in *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C.2009), [s]ettlement agreements are construed under "general principles of contract law." *Goozh v. Capitol Souvenir Co.*, 462 A.2d 1140, 1142 (D.C.1983) (quoting *Brown v. Brown*, 343 A.2d 59, 61 (D.C. 1975)). Accordingly, we enforce a valid and binding settlement agreement just like "any other contract." *Rommel v. West American Insurance Co.*, 158 A.2d 683, 684–85 (D.C.1960).

The language of the settlement agreement is consistent with the expectation that what it settles is an action for possession. The agreement states in pertinent part that "if Defendants fully perform Plaintiff will vacate the judgment and have it dismissed."[3] In context, the obvious meaning of the quoted sentence is that the landlord will cause the complaint, *i.e.*, the action for possession, to be dismissed. The settlement agreement does not, as some settlements do, contain a general release of all liability. Rather, it effectuates the dismissal of an action for possession in a case in which the court lacked authority to award compensation for property damage and in which the plaintiff did

---

& Omri Ben–Shahar, *An Information Theory of Willful Breach*, 107 Mich. L.Rev. 1479, 1479–80 (2009) (citing Restatement (Second) of Contracts Ch. 16, introductory note (1981)).

**3.** One might theoretically ask in this case "what the meaning of 'it' is," for the landlord lacked the authority to vacate a judgment of the court; only a judge could do that.

not (because it could not) request such relief.

In holding to the contrary, Judge Fisher relied primarily on the Notice to Correct or Vacate. In that notice, the landlord asserted that the tenants were responsible for damage to its property.[4] The landlord further maintained that in order to come into compliance with the lease, the tenants were obliged, within thirty days, to take various corrective actions and pay certain invoices.[5] Based on the content of the notice, the judge held that the claim of damage to the landlord's property was a central question in the settled lawsuit. He added that the notice "encompasses each and every one of the alleged items of damage in this case." The judge found that "there is significant damage [to the apartment] that's [been] demonstrated" (through oral testimony and photographs introduced by the landlord). He concluded, however, that this damage "was contemplated—pursued—in the lawsuit and contemplated necessarily by the parties in reaching a settlement agreement." The judge found it significant that "there's no provision in the agreement permitting recovery for the damages," and he concluded

that the agreement did not contemplate a subsequent recovery by the landlord for damage to its property. The judge therefore ordered that the landlord pay the tenants the amount specified in the agreement, minus the March and April rent (for which the tenants were liable because, as we have explained, the judge had found that they did not vacate their unit on or before March 31, 2008), but he upheld the tenants' claim that the landlord had bargained away any right to monetary damages.

Although it is true that the damage allegedly caused by the tenants to the landlord's property was a central theme of the Notice to Correct or Vacate, we cannot agree with the judge that the landlord was seeking (or entitled to) compensation for such damage *in this lawsuit*. Indeed, as we have noted above, the court would have been powerless to award such relief if the case had gone to trial. The allegations of damage in the notice were obviously *relevant* to the lawsuit, for, if proved, the damage would have entitled the landlord to a judgment of possession for breach of the lease. The action for possession could not, however, be used as a vehicle to recov-

---

4. The landlord claimed, *inter alia*, that the tenants were responsible for:

1. "unauthorized and improper installation of window air-conditioning units causing damage to the interior or the unit";
2. "no carpeting to the wood floors as required";
3. "intentional and malicious destruction of private property both in the unit and [in] the common elements of the building";
4. "continuous and negligent refusal to correct the unsafe and unsanitary conditions of your unit, which have [sic] resulted in substantial destruction of the wood floors, walls, and wall framing";
5. "unpaid invoices for work and services provided as a result of your negligence";
6. "failure to timely inform the housing provider of any necessary repairs resulting in substantial property damage"; and

7. "creating a condition that has contravened the fire and liability insurance coverage of the property."

5. The landlord asserted that the required corrective measures included, among others, the following:

1. "Remove improperly installed window air-conditioning units which has [sic] caused damage to the interior of the unit and correct damage";
2. "Return all previously removed property of the housing provider";
3. "Install carpeting to hardwood floors";
4. "Cease and [desist] from all negligent and intentional destruction of property" both to the rental unit and common elements of the property; and
5. "Pay all invoices for work and services provided as a result of your negligence."

er such compensation. There is nothing in the settlement agreement to suggest that the agreement was intended to resolve any claim for damages that legally could not have been a subject of the lawsuit being settled. We are powerless to read into the settlement agreement something that is not there.

It is true that nothing in the settlement agreement provides that the landlord is preserving its right to sue the tenants for damage to its property. The agreement does require the landlord to pay an agreed sum to the tenants, and one might ask why the agreement would provide that the landlord must pay a specified amount of money to the tenants if the landlord could then turn around and bring an action designed to recoup all or much of what the landlord has paid. But the fact that it might have been more practicable for the parties to settle all of their differences in a single agreement does not mean that this is what they did, especially when the text of the settlement agreement provides otherwise.

▮▮▮▮ Perhaps the tenants and their counsel believed that the settlement agreement resolved the entire dispute between the parties, including the alleged damage to the landlord's property described in such detail in the Notice to Correct or Vacate. However, the subjective intent of the parties to a contract is essentially irrelevant. "No matter what [the tenants] may have had in mind, the [c]ourt must construe [the parties'] rights on the basis of the contract as written." *Simpson Bros. v. District of Columbia,* 73 F.Supp. 858, 859 (D.D.C.1947) (Holtzoff, J.); *see also Dyer v. Bilaal,* 983 A.2d at 349, and authorities there cited. "The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Intercounty Constr. Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982). In other words, "[t]he only intent of the parties to a contract which is essential, is an intent to say the words and do the acts which constitute their manifestation of assent." *Hart v. Vermont Inves. Ltd. P'ship,* 667 A.2d 578, 582–83 (D.C. 1996) (citations omitted).[6]

There is nothing in the settlement agreement which would permit a reasonable person in the position of the parties to believe that the document resolves more than those issues which fall within the jurisdiction of the Landlord & Tenant Branch. The agreement settled the action for possession, which had led to the judgment secured by the landlord in that action. The need to resolve the issue of possession in one lawsuit and damages for breach of contract or tort in another is not uncommon, *see, e.g., Pinzon,* 874 A.2d at 351, for the jurisdiction of the Landlord & Tenant Branch is necessarily limited so that it can carry out its functions swiftly and fairly.

▮▮▮▮ It appears from the transcript of the hearing before Judge Zeldon that

---

**6.** In *Hart,* we quoted from the opinion of Judge Learned Hand in *Hotchkiss v. Nat'l City Bank of New York,* 200 F. 287, 293 (D.C.N.Y. 1911), *aff'd sub nom. Ernst v. Mechanics' & Metals Nat'l Bank of City of N.Y.,* 201 F. 664 (2d Cir.1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913):

A contract has, strictly speaking, nothing to do with the personal, or individual intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

although all parties were represented by counsel, the settlement agreement was at least primarily drafted by the landlord's attorney. Under the *"contra proferentem"* doctrine, "[a]mbiguous language in a contract is generally construed against the drafter, at least where the parties were relatively equal in bargaining proven." *American Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc.,* 655 A.2d 858, 862 (D.C. 1995). This doctrine is of no solace to the tenants, however, because *"contra proferentem"* is only a "secondary standard of interpretation" ... *id.,* and more significantly, because the settlement agreement is not ambiguous with respect to the point in contention here.[7] There is nothing in this record to suggest unconscionability; the tenants were represented by counsel, and a reasonable person might well consider the financial aspects of the settlement to be fairly advantageous to the tenants— sufficiently so to persuade the landlord to insist upon including a confidentiality provision in the settlement agreement.

Under these circumstances, we conclude that the agreement must be enforced according to its terms, and cannot legitimately be construed as resolving dispute over alleged damage to the landlord's property—damage for which the landlord could not and did not sue the tenants in the Landlord & Tenant Branch. We are therefore obliged to reject the trial judge's ruling to the contrary.

## V.

### Conclusion

The judge correctly held that the settlement agreement is enforceable, and that its enforcement is not precluded by the tenants' alleged breach of the confidentiality provision. The judge erred in holding that the settlement agreement forecloses recovery by the landlord for damage to its property. The enforcement by the tenants of the settlement agreement shall therefore be without prejudice to a subsequent proceeding by the landlord to seek such a recovery. We express no opinion as to any substantive, procedural, or time-limitation defenses that the tenants may have in any future proceeding by the landlord.

According to the terms of the settlement agreement, the landlord was obliged to pay the agreed upon sum to the tenants shortly after the settlement was reached. Any recovery by the landlord for damage to its property would necessarily have been obtained, if at all, some substantial period thereafter. Accordingly, any future proceeding by the landlord for recovery of damages from the tenants shall not be grounds for a stay of the landlord's obligation to pay to the tenants the amount specified in the settlement agreement, which payment shall be with interest from the date of that agreement. *See Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1253–54 (D.C.1990) (prejudgment interest awardable where debt is liquidated).

The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*

---

**7.** The question whether a writing is ambiguous is one of law. *Clyburn v. 1411 K Street,* *Ltd. P'ship,* 628 A.2d 1015, 1017 (D.C.1993).