*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-678

MICHAEL CHAMBERS, APPELLANT,

V.

JESSICA COBB, APPELLEE.

FILED  10/4/2018
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(LTB-30715-15)

(Hon. Joan Zeldon, Trial Judge)

(Submitted June 4, 2018                    Decided August 9, 2018)[*]

Michael Chambers, *pro se*.

*Adrian P. Torres* was on the brief for appellee.

Before FISHER, THOMPSON, and EASTERLY, *Associate Judges*.

THOMPSON, *Associate Judge*:    *Pro se* appellant Michael Chambers appeals

from a May 22, 2017, judgment of the Superior Court Landlord and Tenant Branch

enforcing a court-approved settlement agreement between Chambers (and his wife)

and appellee Jessica Cobb.  The court enforced the settlement agreement upon a

---

[*]    The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published upon the court's grant of a motion to publish by the District of Columbia Office of the Tenant Advocate.

finding that Cobb, the former tenant of a property owned by the Chamberses, substantially complied with the agreement. Mr. Chambers's primary contention on appeal is that the court's ruling effectively modified the terms of the settlement agreement. We affirm.

## I.

The settlement agreement, entered into by the parties on October 4, 2016, and approved by the court, arose out of a complaint filed by the Chamberses in the Landlord and Tenant Branch to recover possession of the Chamberses' property at 2406 Perry Street, N.E. ("the property"), pursuant to the recovery for "personal use and occupancy" clause of D.C. Code § 42-3505.01 (d). The parties agreed to entry of a nonredeemable judgment of possession, which was to be stayed until March 31, 2017, the agreed-upon date by which Ms. Cobb was to move out of the property.[1] The first sentence of ¶ 1 of the agreement obligated Ms. Cobb to "vacate the [p]roperty, leave broom-clean, and return all keys to [the Chamberses]

---

[1] Ms. Cobb asserts in her brief that she resided in the property for "almost thirty years."

no later than 5 pm" on that date. The next sentence of the agreement states that "[t]ime is of the essence." Under ¶ 3 of the agreement, Ms. Cobb was further required to pay rent "in the amount of $800.00 per month" for October and November of that year and was "responsible for the full and timely payment of all utilities through the date she vacates." The settlement agreement provided that "[i]f and only if [Ms. Cobb] vacates as required in ¶ 1, and pays as required in ¶ 3," the Chamberses would "[r]emit to [her] funds in the amount of $4,000.00 by March 31, 2017."[2]

On April 18, 2017, Ms. Cobb moved to reopen the case to enforce the settlement agreement. At a hearing on that motion on May 22, 2017, the motion judge heard testimony from Mr. Chambers and from Monique Cobb, appellee Cobb's daughter, who had resided with her mother in the property (hereafter, "Monique"). Monique told the court that when Mr. Chambers and his wife "showed up" at the property on March 31 at "about 4:50 p.m.," she told them that she had asked Ms. Cobb's counsel to send Mr. Chambers an email "to ask for an extension of time." Monique further testified that she told the Chamberses that the Cobb family had moved household items out of the property "on multiple times"

---

[2] In addition to this $4,000, the settlement agreement provided that "[c]ontemporaneous with execution of this [a]greement," the Chamberses were to pay Ms. Cobb $6,000. That payment is not in issue in this appeal.

and had called for bulk trash pickup in connection with the move, but on March 31 had been slowed down in moving remaining household items because "it was windy, it was raining, [and] it was storming." Monique testified that she told the Chamberses that the Cobb family "would be done [moving out] at 9:00 p.m." Monique further testified that she "waited after 9:00 p.m. about 20 minutes to see if [the Chamberses] . . . would return." Since they did not return, Monique left a note dated March 31, 2017, 9:17 p.m., which Mr. Chambers read to the court, that stated in pertinent part, "Please see inside envelope for keys. Regarding trash outside, we will be back to collect this weekend."

The court received documentary evidence that Ms. Cobb's counsel sent an email to Mr. Chambers on March 31 at 4:43 p.m. "asking for a slight extension until 9:00 pm [that] []night to move everything," explaining that Ms. Cobb was "moving out the last bit of [her] belongings," but that "the rain ha[d] unfortunately slowed down that process." Mr. Chambers responded at 5:07 p.m. stating that appellee was "supposed to be out by 5:00 p.m.," that she had therefore "violated condition #1" of the settlement agreement, and that he would therefore "not be paying [her] the remainder [$4,000] of the money."

Mr. Chambers told the court that after receiving the email from Ms. Cobb's counsel at 4:43 p.m. on March 31 requesting an extension of time and responding with an email denying the request, and after leaving the property at the conclusion of his discussion with Monique, he "did not return [to the property] until [he] got [a] notice from [Ms. Cobb's counsel] . . . on April 3," stating that "[t]he Cobbs vacated the apartment on March 31st and left the keys to access the property in the mailbox at that time."

At the conclusion of the testimony, the motion judge ruled that Ms. Cobb had "substantially complied with the [settlement] agreement," that any breach was "*de minimis*," and that "whatever [Mr. Chambers was] supposed to do for [Ms. Cobb] under th[e] agreement still is viable."

This appeal followed. Mr. Chambers argues that by its ruling, the Superior Court effectively modified the terms of the settlement agreement, a resolution that Mr. Chambers asserts was "beyond [the] court's authority" and improperly required him to "do something [i.e., pay the $4,000] that was conditioned upon [Ms. Cobb's] fully complying with [the] provision" that required her to have moved out of the property by 5:00 p.m. on March 31, 2017. Mr. Chambers contends that the court's ruling ignored the agreement's "time is of the essence"

clause.[3]  Ms. Cobb relies on contract case law from this jurisdiction and others that looks to whether a breach was material or *de minimis* and whether the non-breaching party was harmed by the breach, and case law that declines to rigidly apply time-is-of-the-essence clauses so as to avoid forfeitures, particularly in non-commercial contexts.

## II.

This court has stressed "the importance of enforcing valid consent judgments," observing that where a consent judgment has been entered embodying

---

[3]  Appellant also contends that the Superior Court judge "fail[ed] to state a 'discernible reason' to support her ruling," and "erred in failing to issue written findings of fact and conclusions of law to support her ruling" and "in allowing testimony of [Monique] who was not a signatory to the settlement agreement."  To the first point, the trial judge succinctly stated the basis for her ruling, i.e. that any breach was *de minimis* and that Ms. Cobb substantially complied with the settlement agreement.  To the second point, "'[p]roceedings in the Landlord and Tenant Branch are of a summary nature,'" *Davis v. Rental Assocs., Inc.*, 456 A.2d 820, 822 (D.C. 1983) (quoting *Mahdi v. Poretsky Mgmt., Inc.*, 433 A.2d 1085, 1088 (D.C. 1981)), and there is no requirement (as there is in some divisions of the Superior Court, *see, e.g.*, Super. Ct. Dom. Rel. R. 52 (a)) that the Landlord and Tenant Court issue written findings of fact or conclusions of law.  And to the third point, Monique was an eyewitness to what transpired on the designated move-out day, and the court acted well within its discretion in allowing Monique to testify on personal knowledge about the events and conditions she witnessed.

the settlement agreement, the agreement "should not be modified in favor of either party, absent the most compelling reasons." *Suitland Parkway Overlook Tenants Ass'n v. Cooper*, 616 A.2d 346, 349 (D.C. 1992) (internal quotation marks omitted) (holding that the trial court erred in failing to vacate the stay of judgment after tenant's rent was tendered ten days later than required under the terms of a consent judgment, which provided that failure to timely pay rent would be a non-curable breach preventing tenant from redeeming her tenancy and entitling the landlord to a writ of restitution, *id.* at 348-49). We have said that the trial court is not "at liberty to [modify or] disregard the explicit terms of a consent judgment" by declaring that a breach is "*de minimis*" and "insufficient to justify forfeiture," lest the court "undercut everything [this court has] said . . . about the presumptive validity 'and hence enforceab[ility]' of consent judgments." *Id.* at 349 (quoting *Moore v. Jones*, 542 A.2d 1253, 1255 (D.C. 1988) (holding that when tenant did not purchase property as agreed in court-approved settlement agreement, failing which she was to move out of the premises under the terms of the agreement, the trial court erred in denying landlord's motion to lift the stay of judgment and in ruling that tenant could redeem her tenancy by paying overdue rent, because that modification of the agreement was beyond the court's authority, *id.* at 1254-56)). We have "rejected the notion that the disfavored status of forfeitures is cause to imply an equitable authority in the trial court to modify a consent judgment."

*Camalier & Buckley, Inc. v. Sandoz & Lamberton, Inc.*, 667 A.2d 822, 826 (D.C. 1995) (internal quotation marks omitted) (remanding to allow the tenant to present evidence of claimed timely payment under the agreement, which proof was required to avoid lifting of the stay of judgment under the terms of consent order, *id.* at 824, 827).  Thus, we have declined to treat settlement agreements approved by the court in precisely the same way as leases or other purely private agreements between the parties. *Suitland Parkway*, 616 A.2d at 351.

On the other hand, this court has endorsed the principle that "equity abhors forfeitures . . . [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 186 (D.C. 2009) (internal quotation marks omitted).  In *Tsintolas*, a settlement agreement, which had been approved by the court, provided that tenants had until April 30, 2008, to vacate their unit, but also provided an incentive for the tenants to move out sooner:  "if they vacated no later than March 31, and if they gave notice to the landlord of their intention to do so no later than March 5, then the tenants would not be required to pay rent for the month[s] of March" and April; and "[i]f the tenants did not vacate their unit before April 1, . . . the rent for March and April was to be subtracted from the agreed upon amount that the landlord was required to pay the tenants under the terms of the settlement." *Id.* at 184.  "The settlement agreement also contained a confidentiality provision prohibiting the

tenants from divulging the terms of the settlement" and providing that the landlord "was entitled to recover the entire settlement amount from the tenants if the tenants divulged the terms of the agreement." *Id.* After the landlord refused to make the payment specified in the agreement, the tenants, who had vacated their apartment by April 30, moved to enforce the settlement agreement. *Id.* at 184-85. The landlord claimed that the tenants had breached the confidentiality provision by filing the agreement with their motion to enforce without causing it to be filed under seal, and contended that "this alleged material breach by the tenants nullified the landlord's obligations set forth in the settlement agreement." *Id.* at 185-86. The trial court disagreed with the landlord's contention that the tenants committed a breach, but this court's focus was on whether the claimed breach of the confidentiality provision, if committed, nullified the landlord's obligation.

We observed that "the agreement had been a matter of public record for several weeks before the tenants filed their motion" and had been read aloud in open court at the time it was approved, and that the landlord had taken "no action to prevent the agreement from becoming, and remaining, a part of the case jacket." *Id.* at 186. In that context we addressed the "gravamen of the landlord's claim . . . that by their alleged violation of the confidentiality provision (which, under the agreement, constituted a material breach), the tenants forfeited their right

to the agreed upon settlement amount." *Id.* Citing the principle that "equity abhors forfeitures," we said that the case "falls within the 'no harm no foul' rule." *Id.* We held that "[s]ince [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[] owed on the [settlement agreement] by [the landlord]." *Id.* at 187 (internal quotation marks omitted). "In other words," we explained, "although adherence to the confidentiality provision was a significant obligation imposed on the tenants by the settlement agreement, *the discernable consequences to the landlord of the tenants having attached a copy of the agreement to the motion were nil*." *Id.* (emphasis added).[4] We rejected the landlord's argument that "the lack of injury made no legal difference," reasoning instead that "[p]roportionality is of consummate importance in judicious adjudication." *Id.* (internal quotation marks omitted).

*Tsintolas* guides our resolution of this case. We need not decide whether, as the trial judge found, Ms. Cobb's failure to be out of the premises by the March 31 at 5:00 p.m. move-out time constituted a "*de minimis*" breach or substantial

---

[4] That was because "[a] citizen who examined the case jacket before the tenants' motion was filed would have had access to the settlement agreement, and the filing of the motion just added a second copy. Nothing really changed." *Tsintolas*, 984 A.2d at 187.

compliance with the court-approved settlement agreement obligation. Rather, we decide that Mr. Chambers was not entitled to avoid payment of the $4,000 owed under the agreement because he did not prove or even proffer that he was harmed by the Cobbs' four-hour tardiness in completing the move.[5] Quite the contrary, he testified that after leaving the property around 5:00 p.m. on March 31, he did not return until after he received an email from Ms. Cobb's counsel on April 3. We take this as evidence that the Chamberses did not urgently need exclusive access to the property by the evening of March 31, and there is no evidence that Mr. Chambers or his wife was precluded from doing anything with respect to the property because of the four-hour delay.[6] In other words, "the discernable consequences to the [Chamberses of the four-hour delay] . . . were nil." *Tsintolas*, 984 A.2d at 187.

This case is quite unlike *Suitland Parkway* and *Moore*, in which the consequence to the landlord of the trial court's excusal of the tenant's late action

---

[5] The record does not support Mr. Chambers's assertion that the April 3, 2017, email to him from Ms. Cobb's attorney was "evidence that [Ms. Cobb] had, in fact, unilaterally extended the deadline in the agreement for no fewer than 3 days."

[6] We acknowledge Mr. Chambers's argument that, under the terms of the settlement agreement, Ms. Cobb was allowed to live rent-free on the property for four months, but the forgone $3,200 in rent was not the result of the four-hour move-out delay. The Cobbs's four-hour delay did, however, excuse the Chamberses from remitting the $4,000 to Ms. Cobb "by March 31, 2017."

was to allow the tenants to preserve their tenancies, in derogation of the landlords' bargained-for objective of ending the tenancies of tenants who were chronically late in meeting their lease obligations. Here, there was no dispute that the Cobbs had vacated the property and ended their tenancy by the night of March 31. And while Mr. Chambers argues in his brief that the 5:00 p.m. move-out time was of "vital importance," he has proffered no reason why that was so (that might occasion a remand for the trial court to take evidence on the issue). In this circumstance, we decline to require the forfeiture (of $4,000) that Mr. Chambers advocates — which, as far as the record reflects, is grossly disproportionate to any injurious consequence of the four-hour delay — or to otherwise disturb the judgment in favor of Ms. Cobb.

A final point: One of the recitals to the settlement agreement states the Chamberses' allegation that they were entitled to a "nonredeemable judgment of possession and an eviction." Even if Ms. Cobb's delay in moving had entitled the Chamberses to Ms. Cobb's immediate eviction, the policies then surrounding eviction in the District of Columbia would have precluded an eviction on March 31. Under the eviction procedures of the U.S. Marshals Service as of March 31, 2017, no evictions would be completed "when a 50% or greater chance of precipitation is forecasted for the next 24 hours." U.S. MARSHALS SERVICE,

https://www.usmarshals.gov/district/dc-sc/general/evictions.htm (last visited July 25, 2018). Mr. Chambers does not contest that it was raining on March 31, 2017, (and, per Monique's testimony it was also windy and stormy that day). If, as the motion judge appeared to accept, it was raining that evening, that is a "most compelling reason[]," *Suitland Parkway*, 616 A.2d at 349 (internal quotation marks omitted), to avoid the forfeiture that Mr. Chambers urges.

Wherefore the judgment of the Superior Court is

*Affirmed*.